## A92A2440. THOMAS v. WHALEY.
### (430 SE2d 655)

BLACKBURN, Judge.

This appeal is from an order domesticating a Virginia court order and modifying its provisions regarding child support and visitation. The appellant and the appellee were divorced in Washington, D. C. in 1987. An order was entered at that time which provided for child support payments by the appellant for the parties' two minor children as well as liberal visitation rights.

The appellant was employed by the United States Information Agency with an annual salary of $64,992 until May 1992, when he was involuntarily retired. Since that time, he has been receiving approximately $33,000 per year in retirement benefits. The appellant also invested heavily in real estate over the years, specifically in rental properties in Washington, D. C.

In June 1991, a Virginia court issued an order reducing the appellant's child support payments to zero after finding that the appellant had no real income. This finding was made notwithstanding the appellant's almost $65,000 salary at the time, because of the trial court's consideration of debts incurred in connection with the appellant's real estate investments. The appellee participated in the hearing in Virginia, and did not appeal the Virginia court's order.

The appellee remarried and moved to Georgia in 1990. When the appellant filed a petition in Georgia in 1992 alleging denial of his visitation rights, the appellee counterclaimed, seeking domestication of the Virginia order and modification of the child support order. The trial court domesticated the Virginia order and modified it to provide for increased child support payments of $750 per month and specified times for visitation. This appeal followed.

1. The appellant contends that the trial court erred in modifying his child support obligation without any showing of changed circumstances. We disagree.

At the time of the June 14, 1991, order entered by the Virginia court, the appellant was found to have gross *wages* of $64,992 per

year, but based upon the " 'debts that he incurred for production income' " in relation to real estate investments, as recognized by a Virginia statute, the court found that appellant had no income for the purposes of calculating support, notwithstanding his salary gained from his employment with the United States Information Agency, which was unrelated to his real estate investments. Consequently, no support was ordered. However, at the time of the June 25, 1992 hearing, the appellant testified that his income had changed due to his involuntary separation. Since his involuntary separation from work in May 1992, the appellant has received approximately $33,000 annually in retirement benefits. Now that he is retired, he manages his investment properties which exceed $2,000,000 in value with approximately $194,000 in equity. Additionally, the appellant annually receives approximately $17,000 in rental income from those investment properties.

More importantly, an improvement in the appellant's financial status and ability to pay is demonstrated by his having provided financial support for his *21-year-old daughter,* a college student in Chicago. Although he no longer has a statutory obligation to financially support his adult daughter as he does his two minor sons, he readily admits that he continuously provides his daughter with money, pays her tuition and books for college, and half of her living expenses. He has also purchased several cars for her use. The record shows that after June 14, 1991, he has contributed the following monetary payments to or on behalf of his daughter:

| 6-16-91 | $313.00 | for her flight to Washington, D.C. |
| 7-23-91 | $344.00 | for college tuition |
| 8-25-91 | $400.00 | |
| 9-3-91 | $400.00 | |
| 9-27-91 | $400.00 | |
| 10-29-91 | $400.00 | |
| 12-1-91 | $400.00 | |
| 12-26-91 | $104.46 | for ski clothing |
| 12-26-91 | $400.00 | |
| 12-26-91 | $5,000.00 | |
| 1-1-92 | $390.00 | |
| 1-1-92 | $320.00 | for college tuition |

In addition to these payments, the appellant includes in his monthly expenditures as "child expenses," "child support" and "tuition" for his adult daughter of $600. He also concedes that he pays for her automobile insurance and monthly automobile payments. When questioned on cross-examination as to his lack of support of his minor sons, he asserted that "[t]hey are not in any danger of starving or going without." He also indicated at trial that he did not pay for the support of his sons because he "knew that the boys were or could be

provided for with the people . . . in whose care they were," and admitted that he chose not to provide support for his minor children because "they didn't absolutely have to have" it. He further acknowledged that, although the Virginia court declared that he did not owe his minor children any money, the order "didn't say that he couldn't give money to [his] daughter," which, as the record reflects, he began doing two days after the June 14, 1991 order. According to appellant, his minor sons "have a mother [in Georgia] and [she has] a new husband that can handle" their support. On cross-examination, the appellant failed to deny that he had enough money to support his sons. This evidence unmistakably demonstrates the appellant's ability to financially support his minor children, which constitutes a change in condition from that alleged by the appellant during the June 1991 hearing in the Virginia proceeding.

"A trial court's decision on whether a substantial change in the parent's income authorizes an upward or downward revision of child support will be allowed to stand on appeal if there is 'some evidence' to support his finding. [Cit.]" *Decker v. Decker*, 256 Ga. 513, 515 (2) (350 SE2d 434) (1986). There is an abundance of evidence to support the trial court's conclusion that the appellant's financial status, including his ability to pay, has materially changed for the better, warranting a modification of his obligation to support his children. Accordingly, the trial court did not abuse its discretion in modifying the previous order as to child support.

2. The appellant also contends that the trial court erred in denying his motion to dismiss under OCGA § 19-6-19 (a), which provides that "[n]o petition may be filed by either former spouse under this subsection within a period of two years from the date of the final order on a previous petition by the same former spouse." The statute necessarily pertains to modification petitions filed in Georgia, and even if the appellee's counterclaim for child support is properly considered a "petition" within the meaning of the statute, the fact remains that no prior petition had been filed in Georgia under OCGA § 19-6-19 (a). The statute has previously been strictly construed in the context of modification petitions filed within two years of the divorce decree which adjudicated a support obligation. *McAlpine v. Leveille*, 258 Ga. 422 (369 SE2d 907) (1988). Similarly, the statute should be strictly applied to multiple petitions filed within this state, and not where the previous adjudication occurred in another state. For that reason, the appellee's counterclaim would not be barred under OCGA § 19-6-19 (a).

It is the sound public policy of this state that parents should be responsible for the support of their minor children. *Blue v. Blue*, 243 Ga. 22, 23 (252 SE2d 452) (1979). It has even been stated that our public policy favors support of minor children by a parent's estate

after that parent's death. *Russell v. Fulton Nat. Bank of Atlanta*, 247 Ga. 556 (276 SE2d 641) (1981). Limiting the application of OCGA § 19-6-19 (a) to multiple petitions filed in this state is appropriate to ensure adherence to our state's strong public policy favoring support of minor children.

The appellant's considerable support payments to his adult daughter, which began immediately following the Virginia order finding him incapable of providing any support for his minor children, makes it abundantly clear that either the appellant perpetrated a fraud upon the Virginia court, or the public policy in Virginia differs greatly from that of Georgia. Although the Virginia order must be afforded full faith and credit in this state even if that order were violative of our public policy, *Cannon v. Cannon*, 244 Ga. 299 (260 SE2d 19) (1979), nothing prevents our application of OCGA § 19-6-19 (a) to protect this state's residents and public policy. See also for example OCGA § 19-6-26, which provides that our courts will not recognize or enforce a judgment from another state that modifies a judgment of this state awarding child support.

3. The appellant further argues that the trial court erred in limiting his visitation rights. A trial court may modify visitation rights without a showing of changed circumstances, and the trial court's increase or decrease of visitation rights will be affirmed on appeal unless the trial court abused its discretion. See *Gazaway v. Brackett*, 241 Ga. 127, 129 (244 SE2d 238) (1978); OCGA § 19-9-3 (b). The trial court's order grants the appellant visitation rights with the children for six weeks each summer, four days at the end of December including Christmas, every other spring break, one weekend a month, and the weekend of Father's Day. Under the circumstances of this case, we cannot conclude that this modification of visitation constituted an abuse of the trial court's discretion.

*Judgment affirmed. Pope, C. J., Beasley, P. J., and Johnson, J., concur. Andrews, J., concurs in the judgment only. McMurray, P. J., and Cooper, J., dissent. Birdsong, P. J., not participating.*

COOPER, Judge, dissenting.

In June 1990, a Virginia court issued a decree reducing appellant's child support payments to zero based on its finding after a hearing that appellant had no real income. Appellee participated in the hearing in Virginia and did not appeal the Virginia court's order. Because I cannot agree that the record shows that appellant's financial status has changed for the better since June 1990, I must respectfully dissent from the majority's holding in Division 1 that the trial court properly modified the child support provisions of the domesticated Virginia decree.

Clearly, the Virginia court's decision reducing appellant's child

support obligation to zero is a decision none of us would have reached. Nonetheless, that decision is the judgment of a sister state's court. It is part of an order which has been domesticated in this state, and must therefore be treated as though it were a local decree. See *Blue v. Blue*, 243 Ga. 22 (252 SE2d 452) (1979). Accordingly, the child support provisions of the Virginia court's order can only be modified if "a change in the income and financial status of either former spouse or in the needs of the child or children" is shown. OCGA § 19-6-19 (a).

The majority holds that evidence at trial showed a material change in appellant's financial circumstances, but my reading of the record reveals no evidence of such a change. Although appellee's attorney asked appellant on cross-examination whether he had $194,000 in equity and elicited a positive response by limiting appellant's answer to the documentation in front of him, appellant explained that the $194,000 figure reflected in that documentation was based on old appraisals and that new appraisals showed a devaluation of approximately 12 to 15 percent so that the mortgages were approximately equal to the new appraised values. Moreover, that same documentation was before the Virginia court. Furthermore, contrary to the majority's view of the evidence, I cannot conclude that evidence of appellant's expenditures on his daughter or his reasons for opposing child support payments for his sons is relevant to the issue of whether appellant's financial status has changed.

With respect to Division 2, I reach the same conclusion as the majority but for a different reason. Because the Virginia order was entered on a petition for modification brought by appellant and OCGA § 19-6-19 (a) bars the filing of another petition for modification "within . . . two years from the date of the final order on a previous petition by the *same* former spouse," that Code section would not apply to bar appellee's petition for modification in this case. (Emphasis supplied.) I would therefore find it unnecessary to reach the issue of whether the two-year requirement contained in OCGA § 19-6-19 (a) applies to orders entered on petitions for modification filed in other states.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED MARCH 19, 1993 —
RECONSIDERATION DENIED APRIL 1, 1993

*Griner & Mirate, Galen A. Mirate*, for appellant.

*J. Reese Franklin*, for appellee.