A06A1249. MOSES v. KING.
(637 SE2d 97)

BARNES, Judge.

Following our grant of her discretionary appeal, Victoria Moses appeals the trial court's order granting Kelvin King's petition for the modification of custody of their daughter. She claims that the trial court erred in modifying custody because no adverse effect on the child was shown, and that there was no showing of new and material conditions arising subsequent to the original award. Moses additionally argues that the trial court impermissibly infringed upon her constitutional rights to parental autonomy by basing its change of custody on her living with her same-sex partner without any showing that this living arrangement harmed her daughter, and also infringed upon her liberty interest in her right to an intimate relationship of her choosing. Because we find that the evidence presented did not show that a material change in condition had occurred, we reverse the trial court's judgment.

When reviewing a child custody decision, this court views the evidence presented in the light most favorable to upholding the trial court's order. *Gibson v. Pierce*, 176 Ga. App. 287, 288 (335 SE2d 658) (1985). As ever, we are "mindful that the Solomonic task of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility." (Citation and punctuation omitted.) *Gordy v. Gordy*, 246 Ga. App. 802, 803 (1) (542

---

[13] See *Pilzer*, supra.
[14] See *Cumbie*, supra.

SE2d 536) (2000). Thus, if the record contains any reasonable evidence to support the trial court's decision on a petition to modify custody, it will be affirmed on appeal. *Durham v. Gipson*, 261 Ga. App. 602, 605 (1) (583 SE2d 254) (2003).

So viewed, the record demonstrates that Moses and King are parents of a 12-year-old daughter. The couple lived together for a time, but, apparently, were never married. In December 2002, the child was legitimated by King, Moses and King were awarded joint legal custody, Moses was appointed the primary physical custodian, and King was ordered to pay $850 per month in child support.

After Moses filed an action for contempt in 2004 for King's failure to pay child support, on December 7, 2004, the court found King to be $16,500 in arrears in child support payments, ordered him incarcerated pending a payment of $5,000, set up a payment schedule for him to pay off the amount in arrears, and ordered King to continue future child support payments. The following day, King, pro se, filed a complaint for modification of child support and change of custody. In the change of custody complaint, King alleged certain circumstances had changed in that:

> [Moses] has become irresponsible and has failed to provide adequate care for child. [Moses] has had several (4) same sex domestic partners of which the most recent resides in the household with the child. [The] Department of Family and Children Services has been contacted by Gwinnett County School regarding marks on child by Defendant involving same sex partner. Child is in continuous company of gay and lesbian adults. Child's grades have dropped since [Moses] was awarded primary physical custodian and changed her school. [Moses] has left minor child alone with other adults for long periods of time. [Moses] has failed to provide basic physical needs. The minor child has expressed to [King] the desire to reside with him and it is in the child's best interest to reside with [King], who has prepared to give her proper care.

Following a hearing, the trial court granted the petition, awarded primary physical custody to King, and ordered Moses to pay child support. The court expressed that

> My decision was not made on your [Moses'] sexual preference, and I don't want you to think that it was. I do find that there has been a change of circumstance, one of those changes in circumstance is not the nature of those relationships but the number of relationships that I believe that

you've had and the number of women that you've brought into the home and the fact that you are in fact living with a partner now outside of marriage. And I understand that you can't marry a woman in the State of Georgia. But I did — and I think the evidence is clear that you and your partner are living together, and that's pretty standard for me in any heterosexual relationship. And when I have heterosexual parents who have divorced, it has always been the order of this Court that there will be no cohabitation, no meretricious relationships outside the presence of marriage. I don't allow women and men to live together in the presence of the child. And that's the situation I've got now. I don't know whether you will believe me or not, but I do want to be clear that it has nothing to do with the fact that the person living with you is female; it has to do with the fact that you are in what I view as a meretricious relationship in front of your child. And I do find that to be a significant change in circumstance.

The court had interviewed the minor child in private, and by agreement, neither the parties nor a court reporter was present. The trial court indicated at the hearing that it was persuaded by the child's comments. In the corresponding order, the court granted Moses visitation and ordered that she pay $416 per month in child support with such payments being offset by the amount of King's arrearage.

Moses filed a motion for new trial from this order, which the trial court granted in part and denied in part. In its order, the trial court essentially restated the terms of its earlier order, but granted Moses' motion for new trial "for the limited purpose of allowing the parties' minor child to either testify in open court or speak privately with the Court in the presence of a court reporter so that the child's testimony may be recorded." The trial court's findings of fact included that:

[Moses] has had at least two partners within the last few years, one of which currently resides in the home with [Moses] and the parties' minor child. [Moses] and her partner are involved in a meretricious relationship. [Moses] testified that on prior occasions she did have her previous partner spend the night while the child was in the residence.

. . .

[King] is married and has children with his current wife. [King] and his wife have been married since July, 2001. [King], his wife and two children, and his mother live in a

four bedroom home. [King's] home provides a more stable environment for the minor child.

Moses, thereafter, filed an application for discretionary appeal which was dismissed because Moses did not comply with the procedures for seeking an interlocutory appeal, which were required as the order was not a final judgment. Subsequently, the trial court held a transcribed hearing at which the child testified, and then entered a "final judgment" in the case, incorporating the findings of facts from the previous orders, and also finding that the child "indicated that she wanted to spend equal time with each of her parents." The court awarded joint legal and physical custody of the child to the parties. The court also held that because the parties are to share physical custody, neither party would be obliged to pay child support to the other. The court did not address, however, the issue of King's repayment of his past due child support obligation.

Moses again filed an application for discretionary appeal, challenging the modification of custody and child support and the issue of King's repayment of his past due child support obligation. Again, because the trial court had scheduled a hearing on the support issue, no final judgment had in fact been entered, and the application was dismissed.

The trial court, subsequently, entered an order requiring that King pay $200 a month to satisfy the arrearage. Moses, thereafter filed an application for discretionary appeal which this court granted, and this appeal ensued.

1. Because Moses' first two enumerations are related, we will consider them together. She argues that the trial court erred in modifying custody on the basis of her partner living with her because there was no showing that her living relationship had any adverse effect on the child, and that there was no showing of new and material conditions arising subsequent to the initial award of custody.

A trial court is authorized to modify [a] custody award upon a showing of new and material changes in the conditions and circumstances substantially affecting the interest and welfare of the child. The proof must show *both a change in conditions and an adverse effect on the child or children.*

(Citations and punctuation omitted; emphasis supplied.) *Todd v. Casciano*, 256 Ga. App. 631, 632 (1) (569 SE2d 566) (2002). See also OCGA § 19-9-1 (b). If the trial court finds that there has been a material change of conditions, it is authorized to modify custody if it is in the best interests of the children. *Bodne v. Bodne*, 277 Ga. 445, 446 (588 SE2d 728) (2003).

"Though the trial judge is given a discretion [in modifying custody, it] is restricted to the evidence and is unauthorized to change the custody where there is no evidence to show new and material conditions that affect the welfare of the child." (Citations and punctuation omitted.) *Mahan v. McRae*, 241 Ga. App. 109, 110 (522 SE2d 772) (1999). This court will not interfere with that discretion absent abuse. *Daniel v. Daniel*, 250 Ga. App. 482, 484 (2) (552 SE2d 479) (2001).

Here, the trial court concluded that "there has been a substantial change in conditions and circumstances with respect to the parties' minor child," and apparently based on its findings of facts discussed earlier, including that, "[Moses] has had at least two partners within the last few years, one of which currently resides in the home with [Moses] and the parties' minor child. [Moses] and her partner are involved in a meretricious relationship," and that King is married and lives in a four bedroom home which provides a more stable environment for the minor child.

There is no evidence in the record, however, that these facts are new or that they demonstrate a material change in circumstances. King, who married his present wife in 2001, was already married when Moses was granted primary physical custody in 2002, and at the modification hearing, there was evidence that the mother's relationship with other women was the primary issue at the original custody hearing. In fact, the mother appears to be in a more stable relationship than when she was originally awarded custody, in that she and her partner have been together for two years and have lived together for one year.

With respect to the mother's cohabitation, the trial court reasoned that it does not allow unmarried men and women to cohabitate in the presence of the child and therefore Moses' relationship with her partner is meretricious per se. However, Georgia's appellate courts have held that a parent's cohabitation with someone, regardless of that person's gender, is not a basis for denying custody or visitation absent evidence that the child was harmed or exposed to inappropriate conduct. See, e.g., *Hayes v. Hayes*, 199 Ga. App. 132, 133 (404 SE2d 276) (1991) (affirming the trial court's finding that there was no change in material circumstances even though both parents were involved in meretricious relationships, because there was no evidence that the child had been exposed to inappropriate conduct); *Livesay v. Hilley*, 190 Ga. App. 655, 656-657 (2) (379 SE2d 557) (1989) (mother's cohabitation provides no basis for a change in custody absent evidence of harm to the child); see also *Brandenburg v. Brandenburg*, 274 Ga. 183, 184 (1) (551 SE2d 721) (2001) (wherein the Supreme Court of Georgia reversed an order which prohibited contact between the children and their father's live-in girlfriend,

because there was no evidence that the children had been exposed to inappropriate conduct or had been adversely affected by the relationship).

Pretermitting the legal merit of the trial court's apparent bright line rule regarding cohabitation, the trial court subsequently abandoned that rationale entirely. In its original modification order the court granted King primary physical custody, with Moses receiving only periodic visitation. Moreover, the trial court also ordered Moses to "refrain from having sexual partners, other than a spouse, spend the night in [her] home when the child is present." But in its subsequent award after hearing the child's testimony on the record, the court granted the child's wish to spend equal time with each parent.[1] Furthermore, there is no requirement in the subsequent order that Moses change her current lifestyle. It necessarily follows that the trial court implicitly *reversed* itself on the very finding that justified a change in custody in the first instance, since the new custody arrangement does nothing other than to reduce the amount of time the child spends with Moses and her partner.

Moreover, contrary to the requirement that the material changes adversely affect the welfare of the child, the trial court found only that the "welfare and happiness of said child would be substantially improved by modifying custody." There was no finding that the changed circumstances in any way adversely affected the child. In fact, the evidence suggests that the child was doing well in school, loved the mother's partner, and was happy and well-balanced. We note that, to the credit of both Moses and King, it is evident that both parents care deeply for their daughter, and it appears that both parents provided loving environments for her. Regardless of whether she was in the custody of Moses or King, the child appears happy and outgoing, and has strong attachments to both parents and her extended family.

No evidence in the record supports the trial court's conclusion that there was a new and material change of condition subsequent to the custody modification which adversely affected the child. Thus, the trial court's order is reversed, and this case is remanded to the trial court for entry of an order consistent with this opinion.

2. Because we have so decided, we need not address Moses' arguments regarding the implications of the trial court's ruling on the broader issues of same-sex cohabitation, partnerships, and parenting.

---

[1] Pursuant to OCGA § 19-9-3 (a) (4.1), "[i]n all custody cases in which the child has reached the age of at least 11 but not 14 years, the court shall consider the desires and educational needs of the child in determining which parent shall have custody. The child's selection shall not be controlling. The best interests of the child standard shall apply."

*Judgment reversed and case remanded with direction. Andrews, P. J., concurs. Bernes, J., concurs in judgment only.*

DECIDED SEPTEMBER 27, 2006 —

*Jack H. Senterfitt*, for appellant.
Kelvin King, *pro se.*