A07A0714. SHARPE v. PERKINS.
(644 SE2d 178)

BLACKBURN, Presiding Judge.

In this domestic relations action, Michael Sharpe appeals the trial court's order granting the modification petition of Renay Perkins (his former wife) to increase his child support obligation and denying his counterclaim to obtain joint physical custody of their minor daughter. Sharpe contends that the trial court erred in (1) finding that the election signed by the couple's minor daughter indicating where she desired to live was invalid; (2) characterizing his capital gains from property sales as gross income in its modification order; (3) failing to adequately consider his obligations to his new household in its modification order; and (4) finding that he owed unpaid private school expenses under the original divorce settlement agreement. For the reasons set forth below, we affirm.

Sharpe and Perkins were married in 1980, had three daughters during the marriage, and were divorced in 1993. A settlement agreement, which was incorporated into the final judgment and decree of divorce, granted Sharpe and Perkins joint legal custody of the couple's three daughters, who were all minors at the time. The settlement agreement granted Perkins sole physical custody of the daughters but provided Sharpe with fairly liberal visitation rights. The settlement agreement also established Sharpe's child support obligations and further established Sharpe's and Perkins's respective obligations to pay for the children's private school expenses.

By 2005, Sharpe had remarried. His new household consisted of his new wife, her two daughters from her previous marriage, and their own new daughter. In addition, Sharpe's and Perkins's youngest daughter, now 14 years old (their only daughter who was still a

minor), was residing nearly equally with Sharpe and Perkins based on an informal arrangement. At this time, Sharpe primarily derived income from purchasing real estate, renovating homes, and then renting those homes to tenants. However, in 2004, Sharpe had $176,000 in capital gains based mostly upon the purchase and resale of unimproved properties. He further estimated that his income tax return for 2005 would also reflect capital gains earned from these types of real estate ventures.

In April 2005, believing that Sharpe's financial circumstances had improved since their divorce settlement, Perkins filed a petition for the modification of child support for their minor daughter, requesting that Sharpe's child support obligation be increased. Sharpe responded and filed a counterclaim, requesting that the court modify the divorce settlement's custody provision and grant him joint physical custody of their minor daughter.[1] In support of his counterclaim, Sharpe filed an election signed by their minor daughter, which stated in part that: "After giving careful consideration to all of the factors involved, I am requesting that the Court award joint legal and physical custody of myself to both of my parents so that I spend an equal amount of time with both parents." While these claims were pending, Perkins filed a motion to hold Sharpe in contempt for failure to pay for their minor daughter's private school tuition as required by the divorce settlement.

Following trial, in which the court heard both the modification and the contempt matters, the court granted Perkins's petition for the modification of child support for their minor daughter and, based on the changes in Sharpe's financial and familial circumstances, increased his monthly child support obligation. The court denied Sharpe's counterclaim to obtain joint physical custody of their minor daughter, finding that the daughter's election as to where she desired to live was invalid. In addition, the court declined to hold Sharpe in contempt but did find that under the divorce settlement agreement, he owed over $7,000 in unpaid private school expenses. Sharpe filed a motion for new trial, which was denied. This appeal followed.

1. Sharpe contends that the trial court erred in finding that the election by the couple's 14-year-old daughter indicating that she desired to live with both parents was invalid. We disagree.

OCGA § 19-9-3 (a) (4) provides that: "In all custody cases in which the child has reached the age of 14 years, the child shall have the right to select *the parent* with whom he or she desires to live. The child's

---

[1] Perkins raised no objection to this counterclaim procedure. See OCGA § 19-9-23 (a); *Bailey v. Bailey*, 283 Ga. App. 361, 363 (641 SE2d 580) (2007).

selection shall be controlling unless *the parent* so selected is determined not to be a fit and proper person to have the custody of the child." (Emphasis supplied.) The statute thus allows a child 14 years of age or older to establish which specific parent has physical custody. See *Walker v. Walker*.[2] The language of the statute requires that the child choose one parent with whom he or she desires to live; any language implying that the child's selection can establish joint physical custody is notably absent. By contrast, OCGA § 19-9-3 (a) (5) provides that: "Joint custody, as defined by Code Section 19-9-6, may be considered as an alternative form of custody *by the court*. This provision *allows a court* at any temporary or permanent hearing to grant sole custody, joint custody, joint legal custody, or joint physical custody where appropriate." (Emphasis supplied.) Thus, in reading the statute so as to give these two sections sensible and intelligent effect, we hold that the court retains exclusive authority to grant joint physical custody. See *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays*;[3] *Walker*, supra, 248 Ga. App. at 177 (1).

Here, the election signed by Sharpe's and Perkins's minor daughter specifically requests that the court award both parents joint legal and physical custody. In doing so, the election fails to choose one parent over the other and instead attempts to interfere with the court's exclusive authority to designate joint custodial status. Accordingly, the trial court did not err in finding that the election was invalid.

2. Sharpe contends that the trial court erred in characterizing his capital gains from property sales as gross income in its modification order to increase his child support obligation. We disagree. Former OCGA § 19-6-19 (a) provided that a child support order "shall be subject to revision upon petition filed by either former spouse showing a change in the income and financial status of either former spouse or in the needs of the child or children."[4] The statute further provided that

[a]fter hearing both parties and the evidence, the jury, or the judge where a jury is not demanded by either party, may modify and revise the previous judgment . . . in accordance with the changed income and financial status of either former spouse or in the needs of the child or children . . . if

---

[2] *Walker v. Walker*, 248 Ga. App. 177 (1) (546 SE2d 315) (2001).

[3] *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays*, 266 Ga. 393, 399 (3) (467 SE2d 875) (1996).

[4] OCGA § 19-6-19 was amended in 2005 and 2006, but neither of those amendments applied to this matter. See Ga. L. 2005, p. 224, § 6/HB 221; Ga. L. 2006, p. 583, § 8/SB 382.

> such a change in the income and financial status is satisfactorily proved so as to warrant the modification and revision.

Former OCGA § 19-6-19 (a). "The final decision of whether to modify the award is within the discretion of the trier of fact." (Punctuation omitted.) *Scott v. Perkins*.[5] Furthermore, "[a] trial court's decision on whether a substantial change in the parent's income authorizes an upward or downward revision of child support will be allowed to stand on appeal if there is some evidence to support his finding." (Punctuation omitted.) *Thomas v. Whaley*.[6]

Here, the trial court granted the modification petition and increased Sharpe's child support obligation. It did so based in part on the fact that Sharpe's gross income had increased due to significant capital gains from property sales in 2004 and 2005. Although Sharpe conceded that he received such capital gains, he argues that the court should not have included those gains in its calculation of his gross income because those gains were derived from a one-time event and thus would be nonrecurring.

However, Sharpe cites to no authority in support of his claim that nonrecurring capital gains should not be included in gross income calculations. Additionally, his claim is belied by the text of former OCGA § 19-6-15 (b) (2), which provided that "[f]or the purpose of determining the obligor's child support obligation, gross income shall include 100 percent of wage and salary income and other compensation for personal services, interest, dividends, net rental income, self-employment income, *and all other income,* except need-based public assistance."[7] (Emphasis supplied.) Furthermore, in defining gross income the Internal Revenue Code specifically includes "[g]ains derived from dealings in property." 26 USC § 61 (a) (3). Accordingly, the trial court did not abuse its discretion by including the capital gains from Sharpe's real estate ventures in its calculation of his gross income and modification of his child support obligation. See *Hayes v. Hayes*.[8]

3. Sharpe also contends that the trial court erred in failing to adequately consider his obligations to his new household in its modification order. "Under [former] OCGA § 19-6-15 (c) (6), a trial court [was] permitted to deviate from the child support guidelines set

---

[5] *Scott v. Perkins*, 230 Ga. App. 496, 497 (497 SE2d 21) (1998).

[6] *Thomas v. Whaley*, 208 Ga. App. 362, 364 (1) (430 SE2d 655) (1993).

[7] OCGA § 19-6-15 was amended in 2005 and 2006, but neither of those amendments applied to this matter. See Ga. L. 2005, p. 224, § 6/HB 221; Ga. L. 2006, p. 583, § 8/SB 382. Effective January 1, 2007, "capital gains" were included as gross income for the calculation of child support. See OCGA § 19-6-15 (f) (1) (A) (xii).

[8] *Hayes v. Hayes*, 279 Ga. 741, 744 (2) (b) (620 SE2d 806) (2005).

forth in § 19-6-15 (b) if a trial court [found] that a party's support obligations to another household make the 'presumptive amount of support either excessive or inadequate.'" *Betty v. Betty*.[9] In considering subsection (c) (6),

> [t]he mere fact of additional children, however, will not justify a reduction in the guideline range. The essential question is whether this additional support obligation renders the presumptive amount of support excessive. The trial court may answer this question only by examining all the relevant circumstances, including the sources of support for the new household. By considering not only the fact of additional children, but also the circumstances relevant to the support needs of those children, the trial court will be able to make a determination of support that best balances the children's needs and the parent's ability to pay.

*Hoodenpyl v. Reason*.[10]

In this case, the trial court specifically considered Sharpe's support obligation to his and his current wife's young daughter in its order increasing his child support obligation for his and Perkins's minor daughter. In doing so, the trial court considered Sharpe's income as well as his current wife's income and ultimately decided that based on his obligations to his current household, Sharpe was entitled to reduce the upward modification of child support payments to his and Perkins's daughter by $200. Accordingly, the record demonstrates that the trial court adequately considered Sharpe's obligations to his new household in its decision to increase his child support obligation for his and Perkins's daughter.

4. In his final enumeration of error, Sharpe contends that the trial court erred in finding that he owed unpaid private school tuition under the terms of the original divorce settlement agreement. While Sharpe agrees that under the settlement agreement both he and Perkins were to share the cost of their youngest daughter's private school education, he argues that Perkins's motion to hold him in contempt and recover the portion of those costs that he owed was barred by the doctrine of laches. However, this argument is without merit. "[T]he right of a child to support belongs to the child and cannot be waived by a parent." *Dept. of Human Resources v. Mitchell*.[11]

---

[9] *Betty v. Betty*, 274 Ga. 194 (1) (552 SE2d 846) (2001).

[10] *Hoodenpyl v. Reason*, 268 Ga. 10, 11 (2) (485 SE2d 750) (1997).

[11] *Dept. of Human Resources v. Mitchell*, 232 Ga. App. 215, 216 (1) (501 SE2d 508) (1998).

Accordingly, the trial court did not err in finding that Sharpe owed unpaid private school tuition under the terms of the original divorce settlement agreement.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED MARCH 20, 2007 — 

*James C. Metts III*, for appellant.
*McCorkle, Pedigo & Johnson, Kenneth P. Johnson*, for appellee.