A07A0979. GOWINS v. GARY.
(654 SE2d 162)

RUFFIN, Judge.

This case involves a dispute over child support payments for twins born to Diana Gowins and W. E. Gary, who have never been married to each other. In November 2005, Gary petitioned to modify his monthly support obligation for the twins, asserting that a change in circumstances authorized a payment reduction. Agreeing with Gary, the trial court reduced his obligation, and we granted Gowins's application for discretionary appeal. For reasons that follow, we vacate the modification order and remand for further proceedings.

We review a trial court's ruling on a modification petition for abuse of discretion, and we will uphold the factual findings underlying the ruling if they are supported by any evidence.[1] But, if the trial court's judgment rests on an erroneous legal theory, we will not affirm.[2]

The record shows that following the birth of the twins, the parties entered into a settlement agreement requiring Gary to pay Gowins $28,000 each month in child support. Gary subsequently sought to modify the agreement and reduce this payment, arguing, among other things, that Gowins was using the money to sustain her own lifestyle and finance questionable investments, rather than to support the twins.[3] The trial court denied Gary's request by enforcing the settlement agreement and its $28,000 monthly obligation through an April 2005 child support judgment. In its order, the trial court found that although Gowins had not been "a good steward of the monies provided her," she was "attempting to provide the twins with a lifestyle as nearly comparable as possible to the lifestyle [Gary's other children] enjoyed."[4] The trial court further found that Gowins was unemployed at the time and had no monthly income.

Approximately seven months later, Gary filed the petition at issue in this case, seeking a downward modification of his monthly support payment. He again asserted that Gowins was misusing the child support payments and spending the money to improve her own lifestyle, as well as the lifestyle of an older child fathered by another man. He further argued that the $28,000 monthly support obligation greatly exceeded the twins' needs.

Following a hearing, the trial court reduced Gary's monthly support payment. The trial court found that Gowins was still unemployed, but that her gross monthly income equaled $28,240 — the support payment from Gary plus $240 she received in child support from her older child's father. It also found that the value of Gowins's home had appreciated, that her credit rating had improved, and that she had received a capital gain from an investment in 2005. The court expressed dismay at Gowins's spending habits and her inability to manage the money received from Gary, and it noted that she spent a significant amount of that money on herself and her older child.

---

[1] See *Sharpe v. Perkins*, 284 Ga. App. 376, 379 (2) (644 SE2d 178) (2007).

[2] See *Monroe v. Taylor*, 259 Ga. App. 600 (577 SE2d 810) (2003).

[3] Gary also argued, based on the doctrine of mutual mistake, that the parties never agreed to a monthly payment of $28,000. The trial court rejected that argument in the April 2005 order, and it is not at issue in this appeal.

[4] We express no opinion on whether the lifestyle enjoyed by Gary's other children was a proper consideration.

Ultimately, the trial court concluded that Gowins did not need $28,000 per month to support the twins. It also determined that her financial status had improved and that she was capable of obtaining employment. It thus reduced Gary's direct monthly payment to Gowins from $28,000 to $5,000.[5]

1. The parties agree that this case is governed by the former version of OCGA § 19-6-19 (a) (2004), which permits modification of a prior child support judgment upon a showing that the income or financial status of either party, or the needs of the children, have changed.[6] Such showing is a threshold requirement.[7] As explained by our Supreme Court: "In a modification proceeding, the trial court must first determine whether there has been such a change in financial status or the child's needs as would support a *reconsideration* of the level of [a party's] obligation to provide financial support for the ... child."[8] The burden of proof rests on the party asserting that a change has occurred.[9]

In modifying Gary's child support obligation, the trial court reached two conclusions: (1) Gowins did not need $28,000 per month to support the twins, and (2) Gowins's financial situation had improved. Gowins challenges these conclusions on appeal, asserting that the record does not warrant a modification. As discussed below, although certain of the trial court's findings may be authorized, the trial court based its decision, at least in part, on evidence and circumstances that do not support a change in support obligations. Accordingly, we must vacate the modification order and remand this case for further proceedings.[10]

(a) Noting that Gowins used Gary's support payment to benefit herself and her third child, the court determined that Gowins did not require $28,000 each month to meet the twins' needs. The trial court did not find, however, that the twins' needs had *changed* since the April 2005 child support award. And overpayment is not a basis for modification. Rather, the focus must be on a change in circumstances.[11]

---

[5] The trial court also ordered Gary to pay approximately $2,500 per month directly to the twins' private school for tuition, a cost previously borne by Gowins.

[6] The legislature amended OCGA § 19-6-19 (a) in 2005, but that amendment did not take effect until, and only applies to cases pending on or after, January 1, 2007. See Ga. L. 2006, p. 583, § 10 (b).

[7] See *Wingard v. Paris*, 270 Ga. 439 (511 SE2d 167) (1999).

[8] (Punctuation omitted.) Id.

[9] See *Eubanks v. Rabon*, 281 Ga. 708, 711 (3) (642 SE2d 652) (2007).

[10] See *Giugliano v. Giugliano*, 260 Ga. 467, 469 (396 SE2d 897) (1990) (remanding case for reconsideration where trial court failed to properly determine whether a change of circumstances had occurred that might justify a child support modification).

[11] See OCGA § 19-6-19 (a) (2004).

The record shows that Gowins's habit of spending excessively and mismanaging the twins' funds preceded the April 2005 order, and Gary asserted prior to entry of that order that his monthly payment should not exceed $5,000. Nevertheless, the trial court approved the $28,000 support payment negotiated by the parties, and neither the trial court nor Gary has cited any evidence that a change in the twins' needs supports a reduction at this point. Regardless of whether the $28,000 monthly payment is excessive, it cannot be modified based on the twins' needs without proof that those needs have changed. The trial court, therefore, abused its discretion in modifying Gary's child support obligation on this ground.[12]

(b) The trial court also found that improvements in Gowins's financial status demanded a modification. " 'Financial status' is a much more comprehensive term than 'income,' and pertains to the conditions or circumstances in which a person stands with regard to his income and property."[13]

(i) In determining that Gowins's financial status had improved, the trial court noted that following the April 2005 order, she reported a $95,000 capital gain on an investment for the 2005 tax year. On appeal, Gowins argues that such gain cannot be considered a change in financial status because (1) the money originally invested constituted sums received through child support payments, and (2) the gain "was a one-time investment return" that will not recur.

Regardless of the source of the investment, however, Gowins reported a significant capital gain, improving her position "with regard to [her] income and property."[14] The income generated was not a direct child support payment; it was a return on the investment derived from such payments. Moreover, we recently rejected the argument that a one-time, nonrecurring capital gain cannot qualify as gross income in a child support modification action.[15] Accordingly, the trial court did not abuse its discretion in considering this capital gain.

(ii) The trial court also found that the value of Gowins's house appreciated between the spring of 2004 and December 2005, a finding

---

[12] See OCGA § 19-6-19 (a) (2004); see also *Moses v. King*, 281 Ga. App. 687, 691 (1) (637 SE2d 97) (2006) (physical precedent only) (trial court erred in modifying custody arrangement where evidence showed that "changed" condition cited by trial court to support the modification had not actually changed since initial custody order); *Applebaum v. Hames*, 159 Ga. App. 552, 553 (284 SE2d 58) (1981) (trial court properly refused to modify custody arrangement based on father's failure to pursue religious training for children where evidence showed that children had not been given religious training prior to the initial custody award; the children's lack of religious education was "a preexisting condition" and not a "change in . . . conditions").

[13] (Punctuation omitted.) *Moccia v. Moccia*, 277 Ga. 571, 572 (1) (592 SE2d 664) (2004).

[14] (Punctuation omitted.) Id.

[15] See *Sharpe*, supra.

that presumably factored into its conclusion that Gowins's financial status had improved. We agree with Gowins that the mere appreciation of this asset does not constitute a change in financial circumstances. Unrealized gains or losses in the constantly fluctuating real estate market do not warrant a modification.[16]

Gary argues on appeal, however, that Gowins withdrew some of the appreciated equity from her home, citing testimony from her mortgage broker. On remand, therefore, the trial court may consider whether, following the April 2005 order, Gowins actually realized a gain or reaped a tangible financial benefit from the increased value of her residence.

(iii) The trial court also made several other factual findings that apparently related to Gowins's financial condition. Although it is not clear whether these findings factored into the modification determination, the trial court erred to the extent it found a change in circumstances based upon them.

First, the trial court noted that Gowins had not attempted to secure employment, despite her ability to work. Gowins, however, was not working when the trial court entered its April 2005 order, and in that order, the court determined that no physical, emotional, or mental impairment prevented her from obtaining full-time employment. Nevertheless, it approved the $28,000 support payment. We fail to see how her continued lack of employment constitutes a *change* in financial status. On the contrary, she simply maintained the status quo with respect to her employment.[17]

The trial court also determined that, at the time of the modification order, Gowins received $28,240 in monthly income, consisting primarily of the money Gary paid Gowins under the April 2005 child support ruling. Logically, however, the receipt of these payments cannot constitute a "change" in Gowins's financial condition. To hold otherwise would create a never-ending basis for modification, as parties would invariably assert that any payment alteration authorized a subsequent modification to account for the rise or fall in "income." Moreover, the modification order in this case proposes to substantially decrease Gary's direct monthly payment, effectively wiping out much of the purported gain and weakening Gowins's

---

[16] See also *Williams v. Williams*, 268 Ga. 126, 129 (485 SE2d 772) (1997) ("[A]n increase in value of an asset allocated in a property settlement is not a change in financial status warranting modification of alimony or child support.").

[17] See *Moses*, supra; *Applebaum*, supra.

financial position. In short, Gowins's financial condition has not "changed" simply because Gary made his required child support payments.[18]

Finally, the trial court found that Gowins's credit rating had improved. It is unclear whether this finding impacted the modification determination. But unless the improved credit rating is linked to a change in income or financial status, this rating should not factor into the trial court's decision.[19]

(c) Undoubtedly, the trial court was concerned about Gowins's spending habits, failure to obtain employment, and mismanagement of the significant sums paid by Gary. But it initially approved the $28,000 support payment in April 2005, despite many of these same concerns. And although Gary claims that the monthly obligation — to which he agreed through settlement — is excessive, it cannot be altered unless he shows that a change in circumstances requires reconsideration.[20] Because the trial court failed to apply this standard and factored inappropriate considerations into its modification decision, we must vacate the modification order and remand the petition for further consideration consistent with this opinion.

2. Given our decision in Division 1, we decline to address Gowins's remaining arguments.

*Judgment vacated and case remanded with direction. Blackburn, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 26, 2007 —
RECONSIDERATION DENIED NOVEMBER 15, 2007.

*Kessler, Schwarz & Solomiany, Randall M. Kessler, Sheri T. Donaldson,* for appellant.

*Lenner, Schatten & Behrman, Kenneth H. Schatten, Cordell & Cordell, Tamar O. Faulhaber,* for appellee.

---

[18] See, e.g., *Green v. Krebs,* 245 Ga. App. 756, 760 (3) (538 SE2d 832) (2000) (error to include child support paid by father to mother for purposes of calculating amount of child support mother owed father after change of custody "because this income would cease as a result of the court's new [custody] order"); *Martin v. Greco,* 225 Ga. App. 752, 753 (2) (484 SE2d 789) (1997) (same).

[19] See *Wingard,* supra.

[20] See id.