**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**May 10, 2012**

# In the Court of Appeals of Georgia

A12A0700. FOX v. KORUCU.                                    DO-032

DOYLE, Presiding Judge.

Ayhan Korucu and Donna J. Fox were divorced in 2002, and Korucu was awarded primary physical custody of their daughter, A. K. Korucu subsequently filed a petition for modification of custody, and Fox filed a motion for summary judgment. The trial court denied the motion, and Fox appeals. We affirm, for the reasons that follow.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all

reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that Korucu and Fox were divorced on October 7, 2002. Pursuant to the final judgment and decree, the parties shared joint legal and physical custody of A. K., and Korucu had primary physical custody. On March 10, 2004, the trial court amended the divorce decree, granting Fox "final decision-making authority concerning the choice of school [A. K.] attends as long as the school is in the same public school district as [Korucu's] residence."

In 2010, Korucu filed a petition for modification of custody seeking tie-breaking authority concerning A. K.'s education on the basis that there had been "a significant change in the circumstances and conditions surrounding the child such that it is in [her] best interest" to so modify custody. In a subsequent amended petition, he alleged that "the significant and material changes surrounding the parties and the parties' minor child include, but are not limited to, [Fox's] refusal to cooperate with [Korucu] to make decisions concerning the child's education that are in the child's best interest, [Fox's] misuse of her tie-breaking authority over

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

educational matters by basing her decisions on bigotry and prejudice, and disregarding the wishes and needs of the child."

Fox filed a motion for summary judgment, arguing that under Georgia law, a dispute over a child's education does not qualify as a material change in circumstances substantially affecting the interest and welfare of the child. In support of her motion, Fox filed her affidavit stating that A. K. was attending public middle school in the district where Korucu resided and that A. K. was in the gifted program, had excellent grades, "thrived" at the school, exceeded all standards in recent testing, was socially active, and was qualified to participate in the 2010 MAP program sponsored by Duke University. Fox also stated that Korucu was the president of the board of directors for the Fulton Science Academy ("FSA"), a charter middle school located in another school district, and that he wanted A. K. to attend FSA and was unwilling to consider any other option. According to Fox, she decided that it was in A. K.'s best interest to attend the public middle school based on Fox's consideration of a number of factors, including the facilities at the school, course offerings and extracurricular activities, commute time, the availability of programs for advanced students, and her concerns that Korucu would "us[e] FSA to distance [A. K.] from [Fox]."

3

In response to the motion, Korucu filed two affidavits, stating in the first: "It is my wish, and it is my strong impression that it is my daughter's wish, that [A. K.] attend middle school at [FSA]. [A. K.] is very unhappy with [her current public middle school], appears very stressed about it, and her grades have begun to fall dramatically." Korucu also stated that FSA had excellent standardized test scores and had received many awards and that over 50 percent of the students were in the gifted program. In a subsequent affidavit, Korucu explained that A. K.'s stress and unhappiness about her current school was based in part on unsafe incidents at the school, including 16 incidents involving weapons. Approximately three months later, Korucu filed a third affidavit stating that when the trial court entered the order giving Fox final decision-making authority regarding A. K.'s education in 2004, "I could not have predicted [A. K.] would be the stellar student she has turned out to be, as she has surpassed any parent's expectations. . . . [A. K.] is a gifted student who has thrived academically, performing better in school and extracurricular activities than I could have dreamed. . . . Due to the minor child's unique and unforeseen abilities, she should be enrolled in [FSA], where she can continue to grow and thrive as a gifted student."

The trial court denied Fox's motion for summary judgment, noting in the order that "it cannot and will not modify final educational decision[-]making authority based solely on the fact that the parents have a dispute over the education of the child. . . . The [c]ourt may, however, modify final educational decision[-]making authority if the [c]ourt finds that there has been a change of circumstances[,] which has substantially affected the interest and welfare of the child." Relying primarily upon Korucu's initial affidavit stating that A. K. appeared to be "very stressed" about her school and that her grades "had begun to fall dramatically," the trial court concluded that "there is a genuine issue of material fact as to whether the choice of school is having a substantial effect on the interest and welfare of the child."

Fox argues that the trial court erred by denying her motion for summary judgment because disagreements regarding a child's education do not qualify as a substantial change in circumstances authorizing a change of custody. She also contends that Korucu's contradictory affidavits establish that there is no evidence that A. K.'s current school has caused her stress or adverse effects or that such effects constitute a new and material change of condition arising since the last custody award. These arguments are unpersuasive.

5

"A trial court is authorized to modify a custody award upon a showing of new and material changes in the conditions and circumstances substantially affecting the interest and welfare of the child. The proof must show *both a change in conditions and an adverse effect on the child. . . .*"[2]

Fox maintains that a disagreement regarding a child's education does not constitute a material change in circumstances sufficient to justify a custody modification. She relies on several cases, including *Terry v. Garibaldi,*[3] in which the parents both sought a change of custody based in part on the parents' inability to make a decision regarding whether their child should attend public or private school.[4] The trial court found that the mother showed a material change in condition based on the parents "differing views regarding the appropriate education setting," and we reversed, holding that "[a] dispute over how a child will be educated is not a material change that will justify a change of custody."[5] In *Terry,* however, there was no

---

[2] (Citations and punctuation omitted; emphasis supplied.) *Todd v. Casciano,* 256 Ga. App. 631, 632 (1) (569 SE2d 566) (2002).

[3] 274 Ga. App. 405, 408 (2) (618 SE2d 6) (2005).

[4] See id. at 406.

[5] Id. at 408 (2).

6

evidence of a change of conditions and, as we noted, the trial court failed to "give any indication in its order that a change in condition has had an adverse effect on the child."[6]

Similarly, in *Bisno v. Bisno*,[7] the father sought a custody change after the mother, who had custody of their children, decided to move to another county and refused to allow the children to remain with the father and attend their current school. The trial court changed custody to the father, and the Supreme Court of Georgia reversed because "[t]he only evidence of any change affecting these minor children grows out of their removal as students from the Hebrew Academy in Atlanta and the natural desire of their father for the children to remain with him and for their excellent education at the Academy to continue."[8] In the absence of any evidence of a substantial change in circumstances, the Supreme Court held that "[t]his falls short of proving a material change substantially affecting the welfare of the minor children."[9]

---

[6] Id.

[7] 238 Ga. 328 (232 SE2d 921) (1977).

[8] Id. at 329.

[9] Id.

In the instant case, in contrast, Korucu submitted an affidavit stating that A. K.'s grades had "begun to dramatically drop" and that she was unhappy and stressed about attending her current school. As the trial court concluded, this constitutes some evidence of a material change in circumstances that adversely affected the child.[10] Although the trial court may ultimately conclude that Korucu failed to meet his ultimate burden, there are genuine issues of material fact that preclude summary judgment at this time.

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[10] We are unpersuaded by Fox's argument that Korucu's affidavits are contradictory and therefore, pursuant to *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986), his first affidavit must be construed against him. Reading the affidavits together in their entirety, we do not find them contradictory.