**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**April 19, 2022**

# In the Court of Appeals of Georgia

A22A0540. CORLEY v. JACKSON.

MILLER, Presiding Judge.

Jamison Onis Corley ("the Father"), proceeding pro se, seeks review after the trial court entered multiple orders in his child custody dispute with Kimberly Marie Jackson ("the Mother"). The Father argues that (1) the trial court erred by finding him in contempt of its final child custody order; (2) the trial court erred by denying his petition to modify the amount of monthly child support; and (3) the trial court erred by denying his petition to modify the child custody arrangements because it did not consider the best interest of the child. Finding no error, we affirm.

"To hold [a litigant] in contempt, the court must find that there was a willful disobedience of the court's decree or judgment. The trial court's discretion in contempt matters is broad, and its decision will be upheld if there is any evidence to

support it." (Citations and punctuation omitted.) *Park-Poaps v. Poaps*, 351 Ga. App. 856, 859 (1) (833 SE2d 554) (2019). Additionally, "[w]e review a trial court's ruling on a [child support] modification petition for abuse of discretion, and we will uphold the factual findings underlying the ruling if they are supported by any evidence. But, if the trial court's judgment rests on an erroneous legal theory, we will not affirm." (Citations omitted.) *Gowins v. Gary*, 288 Ga. App. 409, 410 (654 SE2d 162) (2007). Finally,

> [a] petition to change child custody should be granted only if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award. If there has been such a change, then the court should base its new custody decision on the best interest of the child. A determination that there has been a material change in condition supporting a modification of custody will be affirmed absent an abuse of discretion, and where there is any evidence to support the trial court's ruling, a reviewing court cannot say there was an abuse of discretion.

(Citation omitted.) *Park-Poaps*, supra, 351 Ga. App. at 861 (2).

So viewed, the record shows that the parties are the biological parents of T. C., who was born in 2015. In April 2016, the Father filed a petition to legitimate T. C. Following multiple proceedings including a final hearing spanning three days, the

trial court granted the legitimation petition in March 2020. As part of the order, the trial court found that it was in T. C.'s best interest for the parties to have joint legal custody and for the Mother to have primary physical custody. The trial court also ordered the Father to pay child support in the amount of $264 a month, as calculated through the child support worksheet, and it ordered the Father to pay $2,000 in attorney fees pursuant to OCGA § 19-9-3 (g).[1]

In December 2020, the Mother filed a motion for contempt, alleging that the Father had not paid the $2,000 in attorney fees ordered by the court. In January 2021, the Father filed a petition to modify the custody arrangements and the amount of child support, alleging that the Mother's care of T. C. was deficient in numerous respects.

Following a hearing on both the Mother's motion and the Father's petition, the trial court denied the Father's petition to change the child custody and child support arrangements, and it granted the Mother's motion to find the Father in contempt.[2] The trial court first concluded that the Father had failed to show a material change in the

---

[1] The Father attempted to appeal from the final order on his legitimation petition and the denial of his motion to set aside that order as part of Case Nos. A21A0164 and A21A0738, but we dismissed Case No. A21A0164 for lack of jurisdiction, and the Father withdrew Case No. A21A0738.

[2] The Father also attempted to separately appeal the trial court's contempt order in Case No. A22A0541, but we dismissed that appeal for lack of jurisdiction.

3

circumstances that substantially affected T. C.'s welfare and that he had failed to provide sufficient evidence to show a change in the amount of his income. As for the Mother's contempt motion, the trial court concluded that the Father was willfully refusing to pay the attorney fees because he was clearly aware of his obligation and because his financial records showed that he had the capacity to pay the fees. The trial court ordered the Father to be incarcerated until he made a $500 payment to the Mother's counsel, and it set separate deadlines by which the Father was required to pay the remaining balance. This appeal followed.[3]

1. The Father first argues that the trial court erred in finding him in contempt. The Father specifically argues that (1) there was insufficient evidence to support the initial award of attorney fees; (2) the initial attorney fee order was vague and not sufficiently definite because of subsequent orders that sought to clarify that order; (3) the trial court was improperly biased against him based on his disability and socioeconomic status; and (4) the trial court could not find him in contempt of an

[3] We have jurisdiction over this direct appeal because Corley challenges the denial of his petition to change the child custody arrangements. OCGA § 5-6-34 (a) (11). We also have jurisdiction to address Corley's challenges to the trial court's contempt and child support orders because Corley may raise on appeal "all judgments, rulings, or orders rendered in the case . . . which may affect the proceedings below[.]" OCGA § 5-6-34 (d); *Murphy v. Murphy*, 328 Ga. App. 767, 768-769 (1) (b) (759 SE2d 909) (2014).

4

order that only directed him to pay money. Assuming this enumeration of error is not moot,[4] we conclude that the Father has not shown that the trial court abused its discretion in holding him in contempt.

First, we conclude that we cannot address the Father's arguments to the extent that he challenges the trial court's initial attorney fee order. The Father had the opportunity to appeal the trial court's attorney fee award, either as part of a direct appeal from the trial court's orders setting out the child custody arrangements, see OCGA § 5-6-34 (a) (11) (all orders in "child custody cases awarding, refusing to change, or modifying child custody" may be appealed directly), or through a discretionary appeal from the final order on his legitimation petition. OCGA § 5-6-35 (a) (2); *Numanovic v. Jones*, 321 Ga. App. 763, 764 (743 SE2d 450) (2013) (final order in a legitimation action must generally be made by discretionary appeal). A judgment is conclusive "between the same parties and their privies as to

---

[4] In his brief, the Father states that his mother made the $500 payment on his behalf, but the portion of the contempt hearing transcript to which he cites is not clear on that point, and the contempt order (which was entered after the portion of the record to which he cites) states that he has not paid any amount. Accordingly, we do not see any indication in the record that the Father has purged his contempt in a way that would moot this enumeration of error. See *Herring v. Herring*, 236 Ga. 43, 44 (1) (222 SE2d 331) (1976) ("[W]here a litigant is found to be in contempt of court and is ordered held in jail, his appeal of that order becomes moot upon his release from jail.") (citation omitted).

5

all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." OCGA § 9-12-40.

> Well before the trial court found [him] in contempt, therefore, [the Father] had the opportunity to appeal and put in issue the alleged errors in the [attorney fee] award. . . . [The Father] could have – and should have – sought to cure the alleged errors in the [attorney fee] order before this contempt proceeding began. [His] failure to do so precludes [him] from challenging the merits of that order, which is now conclusive.

(Citations and punctuation omitted.) *Franklin v. Gude*, 259 Ga. App. 521, 523 (578 SE2d 170) (2003). We therefore do not address the Father's argument that there was insufficient evidence in the record to support the attorney fee award.[5]

Second, we conclude that the trial court's order was sufficiently definite and certain. Cf. *Hamilton Capital Group, Inc. v. Equifax Credit Information Svcs., Inc.*, 266 Ga. App. 1, 3 (2) (596 SE2d 656) (2004) ("The defenses to both civil and criminal contempt are that the order was not sufficiently definite and certain, was not violated, or that the violation was not willful[.]") (citation omitted). The trial court's

---

[5] For this same reason, we also cannot address Corley's argument that the trial court erred in denying his motion to disbar the Mother's counsel because that motion was filed and addressed as part of the original legitimation proceedings.

6

order specifically provided that the Father was required to pay $2,000 in attorney fees to the Mother's attorney on or before May 24, 2020. The Father argues that two subsequent clarification orders the trial court entered on June 30, 2020, render the issue of attorney fees vague because neither order mentioned attorney fees, but these orders only sought to correct specific parts of the final order that were unrelated to the issue of attorney fees, and we see nothing in these orders indicating that the trial court purported to supplant its prior order in its entirety or to otherwise erase the attorney fee award. Thus, the attorney fee award was sufficiently definite so as to be enforceable in a contempt proceeding.

Next, we conclude that the Father's argument that the trial court was improperly biased against him was not preserved for appellate review. "[A]s a general rule, this Court does not consider arguments raised for the first time on appeal." *Phillips v. Phillips*, 347 Ga. App. 524, 533 (6) (a) (820 SE2d 158) (2018). "The record demonstrates that [the Father] failed to raise the issue of judicial bias in the trial court or request recusal. Accordingly, we cannot consider the issue." (Citations omitted.) *Langton v. Dept. of Corrections*, 220 Ga. App. 445, 446 (3) (469 SE2d 509) (1996).

Finally, we reject the Father's argument that contempt was not available as a punishment for his failure to pay fees or money. The trial court awarded attorney fees under OCGA § 19-9-3 (g), and that statute specifically provides that the attorney fee awards under that section "may be enforced by attachment for contempt of court[.]" OCGA § 19-9-3 (g). The Father's claim that contempt was not available as a punishment for his failure to pay the attorney fees therefore fails.

We therefore conclude that the Father has not demonstrated that the trial court abused its discretion in holding the Father in contempt.

2. The Father also argues that the trial court erred in denying his request to modify the amount of child support. He specifically argues that the trial court erred by failing to rely on any child support worksheets or financial affidavits when making its decision. The record shows, however, that the Father's request to change the child support initially was derivative of his request to change custody in that he only requested that the Mother pay child support to him once he obtained physical custody. After the Mother testified at the hearing that she had recently obtained a new job with a higher income, the Father moved to recalculate the child support payment based on the Mother's new income. The trial court stated that it would consider recalculating the amount of child support and directed the Father to submit a new, updated child

8

support worksheet. No such updated worksheet, however, appears in the record. "A party will not be heard to complain of error induced by [his] own conduct, nor to complain of errors expressly invited by him." (Citation omitted.) *Mary Allen Realty & Mgmt., LLC v. Harris*, 354 Ga. App. 858, 862 (1) (841 SE2d 748) (2020). Because the Father's apparent failure to submit an updated child support worksheet pursuant to the trial court's directive caused the error that he now complains of, we reject this claim of error.[6]

3. The Father finally argues that the trial court erred in denying his petition to modify the child custody arrangements because (1) he presented evidence of a material change in the circumstances because he showed that the Mother abused T. C. and allowed T. C. to fall behind in his schooling; and because (2) the best interest of the child standard supported a determination that he should have physical custody of T. C. We disagree.

The evidence at the custody modification hearing shows that one day T. C. told the Father, "Mommy hit me," and the Father found multiple bruises on T. C. The Father contacted law enforcement, and he took T. C. to the hospital. According to the

---

[6] The Father appears to argue that the trial court erred by considering health insurance premiums as income, but a review of the record shows that that issue was never raised or addressed below, and so we do not address this argument further.

medical records, T. C. told the interviewer at the hospital that the Mother and T. C.'s maternal great-grandmother hit him with a spatula. At some point, the Department of Family and Child Services ("DFCS") opened an investigation into the abuse allegations and instituted a safety plan wherein T. C. was not allowed to be alone with his grandmother. DFCS subsequently closed the case and returned T. C. to the Mother's custody a few days later. DFCS continued to do an investigation over a three-week period and found "no problems."

As for T. C.'s education, the Father testified at the hearing that, since the initial child custody order, T. C. was diagnosed with hearing and speech problems. The Father testified that he told the Mother about the issues, but she did not believe him. The Father told DFCS about the issues, and DFCS talked to the school and started the process to obtain an individual education program ("IEP")[7] for T. C. On the other hand, the Mother testified that T. C. is currently in speech classes and that she was having T. C. tested for an attention disorder. The Mother denied that the Father was responsible for T. C. obtaining an IEP, and she testified that she was working with T. C.'s school to get him an IEP.

---

[7] "[IEP's] are plans that set out the academic and curriculum goals and the support services needed for special needs students." *Campbell v. Cirrus Ed., Inc.*, 355 Ga. App. 628, 629 n.4 (845 SE2d 393) (2020).

Based on this record, there was evidence to support the trial court's conclusion that there had been no material change in circumstances affecting T. C. Specifically, as to the alleged abuse incident, the trial court was entitled to credit the evidence that DFCS launched an investigation into the matter and eventually returned custody of T. C. back to the Mother after finding "no problems." See *Hardin v. Hardin*, 303 Ga. App. 416, 417-418 (1) (693 SE2d 605) (2010) (trial court was entitled to conclude that no material change in circumstance occurred when both a DFCS investigation and an investigation from law enforcement into allegations of child abuse were not conclusive). As for T. C.'s education, the trial court was also entitled to credit the Mother's testimony that she was aware of T. C.'s medical problems and was working with the school to obtain proper education for T. C. The trial court was therefore allowed to conclude that T. C. had not been adversely impacted by any change in his circumstances such that a change in custody was warranted. See *Fox v. Korucu*, 315 Ga. App. 851, 854 (729 SE2d 16) (2012) ("A trial court is authorized to modify a custody award upon a showing of new and material changes in the conditions and circumstances substantially affecting the interest and welfare of the child. The proof must show *both a change in conditions and an adverse effect on the child*[.]") (citation omitted; emphasis in original).

11

Finally, Georgia law provides that "[t]he trial court must find that a material change in circumstances has taken place *before* it can consider whether modification of custody is in the child's best interests." (Citation and punctuation omitted; emphasis in original.) *Harrison v. Whitaker*, 361 Ga. App. 36, 37 (1) (862 SE2d 597) (2021). Because the trial court found that no material change in the circumstances occurred, the trial court did not err by allegedly failing to consider whether changing the custody provisions was in T. C.'s best interest.

For all the reasons above, we conclude that the Father has not shown that the trial court erred in its rulings in this case, and so we affirm the order holding the Father in contempt and denying his petition to modify the child custody arrangements and the amount of child support.

*Judgment affirmed. Rickman, C. J., and Pipkin, J., concur.*