## A01A0363. DANIEL v. DANIEL.
(552 SE2d 479)

BLACKBURN, Chief Judge.

In this case involving a modification of Suzanne K. Daniel and Marvin C. Daniel's joint legal custody[1] over their daughter, Suzanne Daniel appeals the trial court's order granting decision making authority over educational matters to her husband, arguing that the trial court: (1) improperly employed a "best interest of the child" standard in reaching its decision and (2) improperly allowed Marvin Daniel to counterclaim that he should be given decision making authority regarding his daughter's education. For the reasons set forth below, we find that Suzanne Daniel has waived her right to challenge the trial court's standard of review on appeal and the trial court did not err by allowing Marvin Daniel's counterclaim.

The record reveals that the Daniels were divorced in the Superior Court of Bulloch County on March 29, 1999. The final divorce decree incorporated a settlement agreement between the parties which gave them joint legal custody over their daughter, Harlee. The agreement, however, contained no tie-breaking provisions in case the Daniels could not agree on child rearing matters between themselves. In addition, the agreement awarded primary physical custody of Harlee to her mother.

---

[1] The Daniels' physical custody over their daughter is not at issue in this appeal.

Following the divorce, the Daniels began to disagree regarding their daughter's education. Suzanne Daniel wanted to home school the child, and Marvin Daniel wanted the child to attend public school. Frustrated, Suzanne filed a petition for a change of custody, asking that she be designated the primary decision maker with regard to education, religious training, and health care issues. During the hearing on the matter, Marvin Daniel orally counterclaimed, requesting the trial court to make him primary decision maker regarding his daughter's education.

After hearing evidence, the trial court found that there was insufficient evidence of a change in condition materially affecting Harlee's welfare to justify a change of custody. Nevertheless, the trial court modified the Daniels' joint legal custody over Harlee, granting primary decision making authority over educational matters to Marvin Daniel. Here, the settlement agreement incorporated into the final decree failed to include a procedure for resolving these parental disputes. The trial court sought to fill this parental vacuum by determining the best interest of the child, notwithstanding the fact that there was no predicate showing of a change in condition. In doing so, the trial court relied upon OCGA § 19-9-6 (2). Suzanne Daniel now appeals this ruling, arguing that an improper standard was employed.

1. The record reveals that Suzanne Daniel explicitly agreed with the trial court that the "best interest" standard should be applied to the determination regarding Harlee's education. As such, Suzanne Daniel cannot challenge that issue now. " '[A] party will not be heard to complain of error induced by [her] own conduct, nor to complain of errors expressly invited by [her] during the trial of the case.' " *Clark v. Stafford.*[2] Accordingly, in this particular case, Suzanne Daniel has waived her right to take issue with the standard of review applied by the trial court.

2. We must point out, however, that the modification of custody requested by the Daniels in this case requires a finding of a material change of condition.

When a court is deciding the merits of a divorce action and making a concomitant determination regarding the custody of children of the marriage, that court may make these original custody decisions based on the best interests of the children. See OCGA § 19-9-1 (a) (1). However, once a divorce decree has been approved and "a permanent child custody award has been entered, the test for use by the trial court in change of custody suits is whether there has been a change

---

[2] *Clark v. Stafford*, 239 Ga. App. 69, 72 (2) (522 SE2d 6) (1999).

of conditions affecting the welfare of the child. *Gazaway v. Brackett.*"[3] (Punctuation omitted.) *In the Interest of S. D. J.*[4] See also OCGA § 19-9-3 (a); *Arp v. Hammonds.*[5]

> Whether conditions, which affect the welfare of the child, have changed since the rendition of a former final custody judgment depends on the facts of the case. If reasonable evidence exists in the record to support the trial court's decision to change custody or visitation rights, then the decision of that court will stand. The trial court's decision will not be overturned absent abuse of discretion. Though the trial judge is given a discretion, he is restricted to the evidence and is unauthorized to change the custody where there is no evidence to show new and material conditions that affect the welfare of the child.

(Citations and punctuation omitted.) *Mahan v. McRae.*[6] And, there is no precedent which would allow a trial court, absent a change in conditions affecting the welfare of the child, to modify custody. The best interest of the child should be utilized in deciding the case once a change in condition has been established. Although the trial court cited OCGA § 19-9-6 (2) as a basis for its authority, that Code section does not grant a trial court power to modify joint legal custody arrangements. This Code section merely sets forth definitions of a number of terms. It defines "joint legal custody," providing:

> "Joint legal custody" means both parents have equal rights and responsibilities for major decisions concerning the child, including the child's education, health care, and religious training; provided, however, that the court may designate one parent to have sole power to make certain decisions while both parents retain equal rights and responsibilities for other decisions.

It does not allow a trial court to circumvent the requirement that a change in condition be proven to support a custody modification under the facts of this case.

While a "best interest of the child" standard applies to an initial determination of custody, see OCGA § 19-9-1, it is applicable in a change of custody action only after there has been a showing of a

---

[3] *Gazaway v. Brackett*, 241 Ga. 127, 128 (244 SE2d 238) (1978).
[4] *In the Interest of S. D. J.*, 215 Ga. App. 779 (452 SE2d 155) (1994).
[5] *Arp v. Hammonds*, 200 Ga. App. 715, 716 (409 SE2d 275) (1991).
[6] *Mahan v. McRae*, 241 Ga. App. 109, 110 (522 SE2d 772) (1999).

change in condition materially affecting the child. Here the trial court determined that there had been no showing of such a change of conditions. In cases where the parents have been awarded joint legal custody of their child, the underlying goal is to encourage both parents to continue to play equal parts in raising the child, without court intervention. And, in fact, there is no real difference in parental authority between two parents who remain married and two parents who have divorced but retain joint legal custody except as provided in the decree. The courts are no better equipped to resolve parental decisions for divorced parents with joint legal custody than they are to resolve such issues for married couples. Where a child goes to school is a parental decision. If a married couple is having trouble deciding how their child should be raised, whether in terms of education, religion, or creed, they cannot litigate such issue standing alone, but only in connection with a legal proceeding by which the authority to decide is vested in one of the parties or is otherwise provided for. While it is desirable for both parents to be involved in the lives of their children, a joint legal custody award which fails to provide a method for resolving disputes such as the one involved here ignores the realities of life and guarantees future litigation. It places the court in the position of making decisions that should be made by the parents, jointly or singly if they cannot agree.

Couples entering a divorce, especially where minor children are involved, must do so knowingly and advisedly, aware of their inabilities to agree on fundamental matters of importance, which condition probably contributed to the dissolution of the marriage. It is at the time that the decree is entered that the divorcing parties should work out the very difficulties that form the heart of this case, not afterward. The parties are well advised to adopt a procedure for resolving such disagreements and to include it as a part of the order of the court.

Where a decree of custody has been entered, it has often been negotiated by the parties in a custody agreement, reviewed by the trial court, and modified as the trial court deems necessary. OCGA § 19-9-5. Such agreements, which reflect both the negotiation of the parties and the approval of the trial court, should not be set aside lightly. If they were, then the court would, in essence, become the third parent, thereby violating both the autonomy of the family unit and the independence of the judiciary. Agreements which do not provide a reasonable procedure for resolving disputes in joint custody cases should not be approved by the trial court.

3. Suzanne Daniel also contends that the trial court erred by allowing Marvin Daniel to make a counterclaim at the hearing in which he requested to be appointed the primary decision maker with regard to Harlee's education. We disagree.

OCGA § 9-11-13 (f) provides: "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." In this case, the trial court specifically found that justice required that the counterclaim be considered for two reasons: (1) the needs of Harlee could not be satisfied in the absence of the counterclaim and (2) consideration of the counterclaim fostered judicial economy. In light of these reasons, we cannot say that the trial court erred by considering Marvin Daniel's counterclaim.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED JULY 9, 2001.

*Ashby & Metts, James C. Metts III*, for appellant.
*Oliver, Maner & Gray, Inman G. Hodges, Patricia T. Paul*, for appellee.