A05A0548. TERRY v. GARIBALDI.
(618 SE2d 6)

JOHNSON, Presiding Judge.

The parties were formerly married and have one minor child, who was born in 1991. When the parents divorced in 1994, their settlement agreement was incorporated into the divorce decree. The settlement agreement provided for joint legal and physical custody with the father having the child for five days a week and the mother having him for two days. The agreement did not specify which parent would have custody which days of the week. Neither parent was to pay child support. The settlement agreement did not provide a device to resolve any conflict arising between the parties upon issues involving the welfare of the child.[1]

In February 2002, the father brought a petition for modification and clarification of the final divorce decree. In it, he sought an award of child support and clarification of the final judgment. He alleged that the parties were unable to mutually agree on the days and times for physical custody, and that the mother had interpreted the provision of the agreement as allowing her to have physical custody every weekend. He added that the mother "selfishly and unjustly" denied him any custody or time with the child on weekends. Furthermore, the father sought to modify the divorce decree to require the payment of child support by the mother. To support that request, he alleged a

---

[1] See *Daniel v. Daniel*, 250 Ga. App. 482, 485 (2) (552 SE2d 479) (2001), where the Court noted that trial courts should not approve custody agreements which do not provide a reasonable method of resolving disputes in joint custody cases.

material and substantial change in the mother's income, financial status, and the needs of the child.

The mother filed a counterclaim for modification of custody, alleging that she should be awarded primary physical and legal custody of the child, as well as given authority to make final decisions regarding all issues upon which the parties could not agree. The mother based her counterclaim on an alleged change of condition materially affecting the welfare of the child. She did not specify in her pleadings what material change occurred, but at an August 2002 hearing to decide temporary physical custody she pointed out that the parties could not agree on whether the child should attend public or private school. Specifically, the father wanted the child to attend a neighborhood public school, and the mother wanted the child to attend private school.[2]

The father moved to dismiss the counterclaim based on OCGA § 19-9-23, arguing that the mother could not pursue a change of custody by way of a counterclaim.

After a final hearing, the trial court entered a final order transferring physical custody to the mother. In its order, the superior court acknowledged that, "as a general rule," final orders awarding child custody to one parent in a divorce action can only be modified through a separate action and not by way of counterclaim. But the court held that that rule did not apply in this case. The court stated that

> [i]n a case where both parents have relatively equal rights to custody and control of decisions involving the child's welfare, it does not appear that there is any prohibition to the modification of conditions of custody either in [a] separate case or by way of a counterclaim where there is a change in condition affecting the welfare of the child.

The court noted that the "gridlock" between the parents concerning the child's education is a sufficient change in condition to warrant modification of custody. The court found further that the best interest of the child supports the change of primary physical custody to the mother, and included provisions for visitation by the father and for his payment of child support.

The father filed an application for discretionary review, asking this Court to determine, among other things, whether the superior court erred in allowing the mother to seek a change of custody by way of a counterclaim, and whether the trial court erred in ruling that the

---

[2] After the hearing for temporary physical custody, the trial court temporarily transferred physical custody to the mother for five days per week.

parents' disagreement regarding where the child would attend school is a substantial change of circumstances affecting the welfare of the child that would justify a change in custody. We granted his application and, for the reasons which follow, reverse the decision of the trial court.

1. The father complains that the superior court erred in allowing the mother to seek a change of custody by way of a counterclaim. The law supports his position.

OCGA § 19-9-23 (a) provides that after a court has determined who is to be the legal custodian of a child, any complaint seeking to obtain a change of legal custody of the child shall be brought as a separate action in the county of residence of the legal custodian. OCGA § 19-9-23 (b) provides that a complaint by the legal custodian seeking a change of custody shall be brought as a separate action. OCGA § 19-9-23 (c) provides that no complaint[3] specified in subsection (a) or (b) shall be made in response to any other action or motion seeking to enforce a child custody order.

In *Jones v. Jones*,[4] the mother (custodial parent) filed an action to modify the father's visitation rights and the father filed a counterclaim seeking to change custody. The Supreme Court of Georgia stated that the father violated OCGA § 19-9-23 (a) by, among other things, failing to bring a separate action to have custody changed. Similarly, in *Wilson v. Baldwin*,[5] this Court ruled that in filing a counterclaim seeking to change custody, the father violated OCGA § 19-9-23 by not seeking the change in an action separate from the mother's petition for modification of child support.[6]

Nonetheless, the mother argues that *Lewis v. Lewis*[7] requires that we permit a counterclaim for modification of custody here. In *Lewis*, the father filed a complaint to modify custody, and the mother cross-petitioned for modification of custody. In that case, however, the Court did not examine the issue of whether a counterclaim was prohibited by OCGA § 19-9-23. Issues merely lurking in the record, neither brought to the Court's attention nor expressly ruled upon, have not been decided so as to constitute precedent.[8]

We realize that the filing of a separate change of custody suit by the mother could result in consolidation of the two actions in front of

---

[3] See *Wilson v. Baldwin*, 239 Ga. App. 327, 328 (519 SE2d 251) (1999) (noting that the term "complaint" equates with the term "counterclaim" for purposes of this statute).

[4] 256 Ga. 742, 743 (352 SE2d 754) (1987).

[5] 239 Ga. App. 327 (519 SE2d 251) (1999).

[6] See also *Kapur v. Roach*, 272 Ga. 767 (534 SE2d 420) (2000) (OCGA § 19-9-23 prohibits parent from seeking change of custody as a counterclaim).

[7] 252 Ga. App. 539 (557 SE2d 40) (2001).

[8] See *Eady v. Capitol Indem. Corp.*, 232 Ga. App. 711, 713 (502 SE2d 514) (1998).

the same judge, and that the trial court would have had to consider the custody issue whether the mother filed a counterclaim or a separate complaint. In terms of judicial efficiency, the mother's position is understandable, even compelling. Moreover, it may well be that in enacting OCGA § 19-9-23, the legislature only contemplated a situation in which the parents lived in different counties, and did not intend that the rule prohibiting the filing of a counterclaim to modify child custody would apply in cases in which the parents live in the same county. Unfortunately, there is no way for this Court to know. The statute, as written, does not make that distinction. Instead, the statute is clear: *any complaint* seeking to obtain a change of custody of a child shall be brought as a separate action.[9] We cannot ignore the clear language of the statute, even where it appears, under circumstances presented in this case, to defy logic.

We do not agree with the mother's position that the father's petition sought a change of custody. The parties had different interpretations of what the decree provided on the issue of custody. The father posited that the mother's interpretation of the provision was unfair because it allowed her to have physical custody every weekend. The father simply sought clarification of the meaning of a vague provision in the divorce decree. Modification was requested as to the issue of child support. In the August 2002 hearing set to decide temporary physical custody and support issues, the father's attorney stated that the father's petition did not seek a change of custody, that he was requesting that custody remain as provided in the decree, and that he simply needed the court to determine which five days he is to have custody.

Therefore, the trial court erred in allowing the mother to petition for a change of custody through a counterclaim to the father's petition.

2. The father contends the trial court erred in ruling that a dispute arising out of how the child is educated is a substantial change of circumstances affecting the welfare of the child that would justify a change in custody. We agree that this ruling of the trial court was erroneous.

A dispute over how a child will be educated is not a material change that will justify a change of custody. In *Daniel v. Daniel*,[10] this Court affirmed the trial court's determination that there had been no showing of a change in condition materially affecting the child where the parents could not agree whether to educate the child at home or

---

[9] OCGA § 19-9-23.
[10] Supra.

in public school.[11] And in *Bisno v. Bisno*,[12] the Supreme Court reversed a judgment granting a change of custody predicated on the removal of children from their former school, holding that the petitioner fell short of proving a material change in condition.

Furthermore, we note that the trial court in this case does not give any indication in its order that a change in condition has had an adverse effect on the child.[13]

Under the circumstances, the trial court erred in finding that the mother showed a material change in condition based on the parents' differing views regarding the appropriate educational setting.[14]

3. In two separate enumerations, the father contends the trial court erred in refusing to give him deference as the primary physical custodian, and in finding that a change in custody was in the child's best interest. Based on our holding in Division 1, we need not reach these arguments.

*Judgment reversed. Ruffin, C. J., concurs. Barnes, J., concurs specially.*

BARNES, Judge, concurring specially.

Because I cannot see any ambiguity in OCGA § 19-9-23 (a)'s language providing that "*any complaint* seeking to obtain a change of legal custody of the child shall be brought as a separate action," I am constrained to agree with the majority that Garibaldi should have filed a separate action in this case. "The language of the statute is plain and it is not illogical. . . . A court cannot by construction add to, take from, or vary the meaning of unambiguous words in the statute." (Citation and punctuation omitted.) *Gordon v. Atlanta Cas. Co.*, 279 Ga. 148, 149 (611 SE2d 24) (2005).

The statute apparently does not contemplate a situation such as this in which the parents share custody and reside in the same county, and the initiating action is not one seeking enforcement of a court order, and its application here is unfortunate. The minor child has been living with his mother during the week and visiting his father on weekends for almost three years, and the parties must now revisit the custody issue, incurring additional expense and upheaval. Unfortunately, we are not permitted to interpret the statute to allow the counterclaim for custody modification in this case. "Courts of last resort must frequently construe the language of a statute, but such

---

[11] Id. at 485 (2).

[12] 238 Ga. 328 (232 SE2d 921) (1977).

[13] *Todd v. Casciano*, 256 Ga. App. 631, 632 (1) (569 SE2d 566) (2002).

[14] See generally *Templeman v. Earnest*, 209 Ga. App. 557 (434 SE2d 106) (1993) (no change in circumstances justifying change in custody where parents' living conditions were now "different" and parents no longer were in agreement about custody issues).

courts may not substitute by judicial interpretation language of their own for the clear, unambiguous language of the statute, so as to change the meaning." *Frazier v. Southern R. Co.*, 200 Ga. 590, 593 (37 SE2d 774) (1946).

DECIDED MAY 13, 2005 —
RECONSIDERATION DENIED JULY 14, 2005 —

*Celeste F. Brewer*, for appellant.
*Bogart & Bogart, Jeffrey B. Bogart, George R. Ference, Susan A. Hurst*, for appellee.