**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 18, 2018**

# In the Court of Appeals of Georgia

A18A0910. BORGERS v. BORGERS.

MERCIER, Judge.

We granted Stefanie Borgers's application for discretionary appeal in order to determine whether the trial court erred by (1) modifying custody in a post-divorce contempt proceeding when no motion to modify custody was made, and (2) ordering her to cease home-schooling one of her children and to enroll the child in school. For the reasons that follow, we reverse.

The record shows that Stefanie Borgers (the "mother") and Brian Borgers (the "father") divorced in 2013.[1] The final divorce decree (the "divorce decree") awarded

---

[1] The spelling of the first names of the parties varies in the record. However, both the Final Order granting their divorce and the order at issue in this case refer to the parties as "Stefanie" and "Brian," so we have used these spellings in our opinion.

the parties joint legal custody of their three minor children, but awarded the mother primary physical custody and final decision-making authority regarding the children. In the divorce decree, the court "expressed concern as to whether home-schooling is in the best interests of these children[,]" but did not prohibit the mother from continuing to home-school the children.

On February 10, 2016, the father filed a "Petition for Contempt and Modification of Custody" (the "first contempt petition"), which requested that the trial court hold the mother in contempt for failing to abide by the court-ordered visitation schedule and parenting plan; compel her to refrain from alienating the children from the father and to comply with visitation requirements; modify the father's child support obligation to reflect his then-current earnings; and award attorney fees to the father. In the first contempt petition, the father noted: "This Honorable Court, in its [divorce decree], expressed concern as to whether home-schooling the minor children was in their best interest; despite the Court's concern, the Mother continues to home-school the minor children." However, despite its title, the first contempt petition did not request a change in child custody.

On April 27, 2016, the trial court held a temporary hearing "regarding child support only." This hearing apparently was not transcribed. The trial court thereafter

2

entered a temporary order modifying the father's child support obligation and stating "[a]ll other issues not herein amended shall remain in full force and effect."

Although the court's temporary order only addressed child support and specifically noted that the temporary hearing addressed "child support only," on September 2, 2016, the father filed a Petition For Contempt of the Court's Temporary Order (the "second contempt petition"), contending that the mother interfered with court-ordered counseling and was in contempt of the parenting plan. In the second contempt petition, the father sought, among other things, to have the mother held in contempt and incarcerated. The second contempt petition did not mention home-schooling or request a modification of custody.

Following a hearing that apparently was not transcribed, the trial court issued on June 1, 2017 a "Final Order Regarding Contempt Order and Modification" resolving both contempt petitions. The court found the mother in contempt of the court-ordered parenting plan and sentenced her to serve ten days in jail, which sentence was suspended at the father's request, subject to other conditions set forth in the order. The court also set forth a visitation schedule, awarded attorney fees to the father, and set the case for an August 2017 status hearing. The order specifically stated

3

that "[a]ll other issues not herein amended shall remain the same as previously adjudicated[.]" With regard to home-schooling, the court stated,

> The Court finds it to be a shame that the Defendant Mother has not taught her children to be independent; the [c]ourt makes the findings based on the expert witness testifying that the children have issues in small classes as they have been previously home schooled by the Mother. The [c]ourt has informed the Mother as it was not requested she will not change custody[.]

On August 16, 2017, the trial court held a status hearing that apparently was not transcribed. Following the hearing, the court entered a "Compliance Order" on August 29, 2017, finding that "all parties ha[d] complied with the [c]ourt's previous final order." However, the Compliance Order also stated the following:

> The [c]ourt also heard argument concerning the parties' youngest child's schooling. The [mother], through her counsel, presented to the [c]ourt that since the previous hearing the parties' youngest child was taken out of Montessori School and at the time of the hearing was being home schooled. The [c]ourt, based on the previous recommendations provided by Dr. Patricia Wright at the May[] 2017 hearing and the [c]ourt's own beliefs as to the child's best interest hereby orders the [mother] to immediately enroll the child in school and ensure the child is not "home schooled" for the purposes of the child's education. The [c]ourt finds that the child's enrollment and attendance at the Montessori School should be convenient for the child and Mother as the Mother is actively

4

employed with the Montessori School and the child would benefit from the wonderful educational opportunity at the Montessori School.

1. The mother argues on appeal that because the final divorce decree made her the primary physical custodian and final decision-maker regarding the children, which included the authority to make decisions regarding the children's education, the trial court's order that she enroll the parties' youngest child in school, rather than allowing her to home-school the child, constitutes an improper modification of custody in this contempt action.

"In a contempt proceeding, as here, the trial court has authority to interpret the meaning of a divorce decree. In such action, the trial court does not have authority to modify a final judgment and divorce decree." *McCall v. McCall*, 246 Ga. App. 770, 772 (1) (542 SE2d 168) (2000) (footnote omitted). Thus, we first must determine whether the order at issue here modified the parties' divorce decree. If so, we must determine whether the court erred in modifying the divorce decree.

(a) While there do not appear to be any cases specifically holding that an order directing a child's final decision-maker to educate the child in a particular manner constitutes a modification of the final divorce decree, it is clear that "[w]here a child goes to school is a parental decision," *Daniel v. Daniel*, 250 Ga. App. 482, 485 (2)

5

(552 SE2d 479) (2001), and this Court has previously issued a few rulings tangentially relating to this issue. For example, in *McCall*, 246 Ga. App. at 771, the mother was granted sole custody of the children, and the father filed a motion for contempt, arguing, in part, that the mother had failed and refused to facilitate his receipt of information about the children's school work. The trial court granted the father, among other things, direct access to schools, health care providers, tutors, or therapists to obtain any information, reports, or records that he desired. Id. at 771-772. We agreed with the mother that by extending to the father rights reserved to her in the final divorce decree as the sole legal custodian of the children, the trial court "transformed the final judgment" and effectively granted a change in custody equivalent to "joint legal custody," which it was not authorized to do in a contempt proceeding. Id. at 773-774 (2).

In addition, this Court has not questioned whether actions appealed regarding a change in a child's education were properly brought as custody actions. For instance, in *Daniel*, 250 Ga. App. at 483, the parties were awarded joint legal custody of their minor child and the agreement contained no "tie breaking" provision. Following the divorce, the Daniels began to disagree regarding their child's education: the mother wanted to home-school the child, and the father wanted the child to attend

public school. Id. The mother filed a petition for a change of custody, requesting that she be designated the primary decision-maker with regard to the child's education, religious training, and health care issues, and the father counterclaimed, requesting that the trial court make him primary decision-maker regarding his child's education. Id. This Court noted, "the modification of custody requested by the Daniels in this case requires a finding of a material change of condition[,]" Id. at 483 (2), thus implying that a change regarding which parent has primary decision-making authority over education is a change in custody.

Similarly, in *Fox v. Korucu*, 315 Ga. App. 851, 854-855 (729 SE2d 16) (2012), an appeal of a ruling in a custody modification action, this Court held that a disagreement regarding a child's education may constitute a material change in circumstances sufficient to justify a custody modification if there is evidence of a material change in circumstances that adversely affects the child. In *Odum v. Russell*, 342 Ga. App. 390 (802 SE2d 829) (2017), another appeal of an order in a custody modification action, the trial court modified several parenting provisions of the original divorce decree, including changing the final decision-making authority about education from the father to the mother. We held that "the trial court was not authorized to modify the original custody order by altering parental custody arrangements, which

included arrangements over which parent would have final authority over certain decisions relating to the child" because the trial court had expressly found that there had been no material change in circumstances. Id. at 393 (1). Likewise, in *Terry v. Garibaldi*, 274 Ga. App. 405 (618 SE2d 6) (2005), the mother sought a change of custody based in part on the parents' inability to make a decision regarding whether their child should attend public or private school. Id. at 405-406. The trial court found that the mother showed a material change in condition based on the parents' differing views regarding the appropriate educational setting, but we reversed after finding that an educational dispute typically is not a material change in condition that will justify a change of custody, and, further, the court's order did not indicate that a change in condition had an adverse effect on the child. Id. at 408-409 (2).

In the case before us, the divorce decree awarded the mother primary physical custody and final decision-making authority regarding the children, and the mother decided to home-school the youngest child. However, the father and the trial court disagreed with this decision, and in the father's contempt action, the trial court ordered the mother to enroll the child in private school rather than allowing the mother to continue to home-school the child. The educational issue in this case, as in the cases above, is a custody issue. Whether the trial court effectively granted the father the right

8

to make decisions regarding the child's education or took it upon itself to make this particular decision, the result is the same: the final decision-maker regarding the children lost her right to make the final decision about the youngest child's education. Thus, the order appealed from effectively modified the divorce decree's custody provision.

(b) Finding that the trial court's order modified custody, we must next determine whether the trial court was authorized to modify custody in this contempt action. The argument asserted presents a question of law, and we owe no deference to the trial court's ruling. *Hammonds v. Parks*, 319 Ga. App. 792, 794 (3) (735 SE2d 801) (2012).

We agree with the mother that the court exceeded its authority by entering an order modifying the respective legal rights of the parents in a contempt proceeding. To obtain a change of custody, the non-custodial parent must file a new action for that specific purpose. See OCGA § 19-9-23 (a); *McCall*, supra at 772 (1) (a contempt proceeding and a change of custody proceeding must be instituted as two separate actions).

In this case, the record is devoid of any evidence showing that the father filed a valid custody modification action. The father's first contempt petition was entitled

9

"Petition for Contempt and Modification of Custody," but at no point did he seek a change of custody, nor did he file a separate modification action. In addition, the father has not asserted in an appellate brief or otherwise demonstrated that the mother waived her right to assert the impropriety of the inclusion of a change-in-custody request in a contempt proceeding. Given that a separate and independent action to modify custody was not filed as required by OCGA § 19-9-23 (a), and the father has not demonstrated that the mother waived her rights under OCGA § 19-9-23, the trial court lacked authority to modify the divorce decree in this contempt action.

2. In light of our holding in Division 1, we need not address the mother's contention that the trial court abused its discretion by ordering her to cease home-schooling the child, when home-schooling "is an accepted, legal form of education in the State of Georgia."

*Judgment reversed. Doyle, P. J., concurs. Dillard, C. J., concurs fully and specially.*

A18A0910. BORGERS v. BORGERS.

Dillard, Chief Judge, concurring fully and specially.

The liberty interest of parents to direct the upbringing, education, and care of their children is the most ancient of the fundamental rights we hold as a people,[1] and is "deeply embedded in our law."[2] This cherished right derives from the natural order,[3] preexists government, and may not be interfered with by the State except in the most compelling circumstances. And while I agree with the majority that the trial court lacked the authority to alter the parties' custody agreement in this contempt action, I write separately to express my serious concerns with the court's decision to summarily substitute its judgment regarding the child's education for the mother's without identifying evidence of the compelling circumstances necessary to interfere with her constitutional parental rights. In doing so, the trial court failed to give sufficient

---

[1] I concur fully in the majority's thoughtful and well-reasoned opinion. As a result, it may be cited as binding precedent. *See* Court of Appeals Rule 33.2 (a) (1).

[2] *Patten v. Ardis*, 304 Ga. 140, 141 (816 SE2d 633) (2018).

[3] *Id.* at 141 ("More than a hundred years ago, this Court identified [the right of parents to the care, custody, and control of their children] as among the inherent rights that are derived from the law of nature."); *see Sloan v. Jones*, 130 Ga. 836, 847 (62 SE 21) (1908), *superceded by statute on other grounds as recognized by Proctor v. Proctor*, 164 Ga. 721 (139 SE 531) (1927); *Moore v. Dozier*, 128 Ga. 90, 93-94 (57 SE 110) (1907); *Rives v. Sneed*, 25 Ga. 612, 622 (1858).

consideration to the federal and Georgia constitutions, both of which afford significant protection of a parent's right to the care, custody, and control of his or her child—which undoubtedly includes the right to make educational decisions. Our trial courts must be mindful in *every case* involving parental rights that, regardless of any perceived authority given to them by a state statute to interfere with a natural parent's custodial relationship with his or her child, such authority is *only* authorized if it comports with the long-standing, fundamental principle that "[p]arents have a constitutional right under the United States and Georgia Constitutions to the care and custody of their children."[4] In this respect, the Supreme Court of the United States has

---

[4] *Clark v. Wade*, 273 Ga. 587, 596 (IV) (544 SE2d 99) (2001) (plurality opinion); *see Meyer v. Nebraska*, 262 U. S. 390, 399 (43 SCt 625, 67 LEd 1042) (1923) (noting that the "liberty interest guaranteed by the Fourteenth Amendment [to the United States Constitution] includes freedom . . . to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home[,] and *bring up children*, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men" (emphasis supplied)); *see also Prince v. Massachusetts*, 321 U. S. 158, 166 (64 SCt 438, 88 LEd 645) (1944) (noting that there is a "private realm of family life which the state cannot enter"); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 535 (45 SCt 571, 69 LEd 1070) (1925) ("The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."); *In the Interest of M. F.*, 298 Ga. 138, 144-45 (2) (780 SE2d 291) (2015) ("The presumption that children ordinarily belong in the care and custody of their parents is not merely a presumption of the statutory and common law, but it has roots in the fundamental constitutional rights of parents. The Constitution secures the fundamental right of parents to direct the upbringing of their children, and it protects a private realm of family life which the

3

acknowledged that "[t]he liberty interest . . . of parents in the care, custody, and

control of their children—is perhaps the oldest of the fundamental liberty interests . . .

. ."[5] And while a parent's right to raise his or her children without state interference is

state cannot enter without compelling justification." (punctuation and citation omitted)); *Brooks v. Parkerson*, 265 Ga. 189, 191 (2) (a) (454 SE2d 769) (1995) ("The U.S. Supreme Court has long recognized a constitutionally protected interest of parents to raise their children without undue state interference."); *see generally* U.S. Const. amend. IX ("The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others *retained* by the people.") (emphasis supplied); U.S. Const. amend. XIV, § 1 (". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . ."); Ga. Const. Art. 1, § 1, XXIX ("The enumeration of rights herein contained as part of this Constitution shall not be construed to deny to the people any *inherent rights* which they may have hitherto enjoyed.") (emphasis supplied).

[5] *Troxel v. Granville*, 530 U.S. 57, 65 (II) (120 SCt 2054, 147 LE2d 49) (2000) (plurality opinion); *see id.* at 68 (II) (noting the constitutional presumption that "fit parents act in the best interests of their children"); *Parham v. J. R.*, 442 U.S. 584, 602 (III) (b) (99 SCt 2493, 61 LE2d 101) (1979) (noting that the federal constitution's "concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions," and that "natural bonds of affection lead parents to act in the best interest of their children"); *see also* 2 ST. GEORGE TUCKER, BLACKSTONE'S COMMENTARIES WITH NOTES OF REFERENCE TO THE CONSTITUTION AND LAWS OF THE FEDERAL GOVERNMENT OF THE UNITED STATES AND THE COMMONWEALTH OF VIRGINIA 446 (Birch & Small 1803) ("The duty of parents to provide for the maintenance of their children is a principle of natural law."); 2 JAMES KENT, COMMENTARIES ON AMERICAN LAW 169 (O. Halsted 1827) (noting that "[t]he rights of parents result for their duties [to their children]," and "the law has given them such authority"); JOHN LOCKE, SECOND TREATISE OF GOVERNMENT, Ch. 6, § 71 (Hackett Publishing Co., Inc. 1980, originally published in 1690) ("This shews the reason how it comes to pass, that *parents in societies*, where they themselves are subjects, retain a *power over their children*, and have as much right to their subjection, as those who are in the state of nature.") (emphasis supplied).

largely expressed as a "liberty" interest, the Supreme Court of the United States has also noted that this right derives from "privacy rights" inherent in the text, structure, and history of the federal constitution.[6]

In Georgia, a parent's natural right to familial relations is also recognized "under our state constitutional protections of liberty and privacy rights."[7] Indeed, Georgia courts have repeatedly recognized that "the constitutional right to raise one's children is a fiercely guarded right in our society and law, and a right that should be infringed upon only under the most compelling circumstances."[8] In fact, according to our

---

[6] *See Brooks*, 265 Ga. at 191-92 (2) (a); *see also Clark*, 273 Ga. at 606 (Thompson, J., dissenting) ("Under the Due Process Clause of the Fourteenth Amendment, and our state constitution, parents have a fundamental liberty interest *and privacy right* in raising their children without undue state influence." (emphasis supplied)); *see, e. g.*, *Prince*, 321 U.S. at 165 (recognizing a parent's authority over rearing his or her children and the right of a parent to control over and training of her child as "sacred private interests" that are "basic in a democracy").

[7] *Brooks*, 265 Ga. at 192 (2) (a). *Cf. Powell v. State*, 270 Ga. 327, 330-31 (2) (510 SE2d 18) (1998) ("[T]he 'right to be let alone' guaranteed by the Georgia Constitution is far more extensive tha[n] the right of privacy protected by the U.S. Constitution, which protects only those matters 'deeply rooted in this Nation's history and tradition' or which are 'implicit in the concept of ordered liberty.'").

[8] *In the Interest of D. M.*, 339 Ga. App. 46, 52 (793 SE2d 422) (2016) (punctuation omitted); *accord In the Interest of J. C.*, 242 Ga. 737, 738 (1) (251 SE2d 299) (1978); *In the Interest of S. O. C.*, 332 Ga. App. 738, 743 (774 SE2d 785) (2015); *In the Interest of J. V. J.*, 329 Ga. App. 421, 425 (765 SE2d 389) (2014); *In the Interest of C. J. V.*, 323 Ga. App. 283, 283 (746 SE2d 783) (2013); *In the Interest*

5

Supreme Court, "there can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to [his or her] offspring."[9] And the fundamental liberty interest of natural parents in "the care, custody, and management of their child does not evaporate simply because they have not been model parents. . . ."[10] To be sure, parental rights are not absolute. But when this fundamental liberty interest is at stake, the court must "give full, fair, and thoughtful consideration to the serious matter at hand."[11]

Suffice it to say, a parent's right to the care, custody, and control of one's child includes a constitutionally protected right to make decisions regarding the child's education—including the choice to homeschool.[12] Indeed, in addition to the Supreme

---

*of M. A.*, 280 Ga. App. 854, 856 (635 SE2d 223) (2006).

[9] *In the Interest of M. F.*, 298 Ga. at 145 (2) (punctuation omitted); *accord Floyd v. Gibson*, 337 Ga. App. 474, 479 (1) (788 SE2d 84) (2016).

[10] *In the Interest of M. F.*, 298 Ga. at 145 (2); *accord Santosky v. Kramer*, 455 U.S. 745, 753 (II) (102 SCt 1388, 71 LE2d 599) (1982); *In the Interest of S. O. C.*, 332 Ga. App. at 746-47 (3).

[11] *Floyd*, 337 Ga. App. at 479 (1); *accord In the Interest of C. H.*, 343 Ga. App. 1, 15 (805 SE2d 637) (2017) (Dillard, C. J., concurring fully and specially) (Certiorari review granted by the Supreme Court of Georgia on June 18, 2018. See S18C0322.)

[12] *See Wisconsin v. Yoder*, 406 U.S. 205, 231 (IV) (92 SCt 1526, 32 LE2d 15) (1972) (recognizing "the traditional concepts of parental control over the religious

Court of the United States's landmark decisions in *Meyer*, *Pierce*, and *Yoder*,[13] the fundamental right of a parent to homeschool his or her child is also supported by *Washington v. Glucksberg*,[14] which held that the federal Constitution "specially

upbringing and education of their minor children recognized in [the United States Supreme Court's] past decisions"); *Pierce*, 268 U.S. at 534-35 (acknowledging "the liberty of parents and guardians to direct the upbringing and education of children under their control[,]" and noting that "rights guaranteed by the Constitution may not be abridged by legislation which has no reasonable relation to some purpose within the competency of the state"); *Meyer*, 262 U.S. at 400 ("Corresponding to the [constitutional] right of control, it is the natural duty of the parent to give his children education suitable to their station in life."); *Clark*, 273 Ga. at 593-94 (III) ("[P]arents have the right to establish a home, direct the upbringing of their children, and control their children's education, and the state may not sever the rights of parents in their natural child in a neglect proceeding unless it proves by clear and convincing evidence that the parents are unfit to raise their children."); *In the Interest of R. B.*, ___ Ga. App. ___, ___ (816 SE2d 706) (2018) (Dillard, C. J. concurring specially) ("The liberty interest of parents to direct the upbringing, education, and care of their children is the most ancient of the fundamental rights we hold as a people. This most cherished right derives from the natural order, preexists government, and may not be interfered with by the State except in the most compelling circumstances."); *see also People v. DeJonge*, 442 Mich. 266, ___ (1993) (citing *Yoder* in concluding that "a teacher certification requirement is an unconstitutional violation of the Free Exercise Clause of the First Amendment as applied to" religious homeschooling families); *Delconte v. State*, 329 SE2d 636, 646 (N.C. 1985) ("[T]he principles enunciated in *Yoder* and *Pierce* raise serious questions as to the constitutionality of statutes which prohibit altogether home instruction."); *Mazanec v. N. Judson-San Pierre Sch. Corp.*, 614 FSupp 1152, 1160 (N.D. Ind. 1985), *aff'd*, 798 F2d 230 (7th Cir. 1986) (citing *Pierce* and *Yoder* in holding that parents have "a constitutional right to educate [their] children in an educationally proper home environment," and also expressing doubts as to whether "requirements of a formally licensed or certified teacher . . . would now pass constitutional muster."). *Cf*. OCGA § 20-2-690 (a) ("This subpart recognizes the existence of public schools, private schools, and *home study programs* as educational entities.") (emphasis supplied); OCGA § 20-2-690.1 (a) ("Mandatory attendance in public school, private school, or *home school program* shall be required for children between their sixth and sixteenth birthdays . . . ." (emphasis supplied)); OCGA § 1-4-14 ("The first week in February of each year is declared to be 'Home Education Week' in Georgia.").

[13] *See supra* notes 4, 12 & accompanying text.

[14] 521 U.S. 702 (117 SCt 2258, 138 LE2d 772) (1997).

protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition."[15] As one legal scholar has observed, homeschooling was "not only legal at the very early stages of our 'history and tradition,' but was also the predominate form of education."[16] A parent's fundamental right to homeschool his or her children was also, significantly, "recognized and unchallenged when the Constitution was drafted and when the Fourteenth Amendment was passed."[17] And while the Supreme Court of Georgia has yet to explicitly declare that a parent's right to care, custody, and control of his or her children includes the right to homeschool them, it is difficult to see how the Court's reasoning in *Patten v. Ardis*—which is steeped in this state's constitutional and jurisprudential history[18]—would not apply with equal force and extend to such a fundamental parental

---

[15] *Id.* at 720-21 (II).

[16] Billy Gage Raley, "Safe at Home: Establishing A Fundamental Right to Homeschooling," 2017 B.Y.U. Educ. & L.J. 59, 73 (2017); *see also id.* at 71- (chronicling widespread presence of homeschooling in Ancient Greece, Ancient Rome, Medieval England, and Colonial America).

[17] *Id.* at 78.

[18] *See generally Patten*, 304 Ga. at 141-44 (2). Interestingly, our Supreme Court rightly recognized in *Patten* that it had "been less than precise about the particular provisions of our state constitution that guarantee the right of parents to the care, custody, and control of their children," *Id.* at 143 (2) n.9, explaining that while the Due Process Clause of the Georgia Constitution (Ga. Const. Art. I, § I, ¶ I) has been

8

duty.[19] There is little question, then, that parents have a fundamental right under the United States and Georgia Constitutions to homeschool their children.

Nevertheless, here, in addition to disregarding the plain terms of the current custody agreement, the trial court appears to have given little, if any, consideration of the mother's constitutionally protected liberty interest in deciding to homeschool her child. Indeed, without even referencing the significant liberty interests at stake, the court questioned and undermined the mother's choices regarding her child's education, ordering her to enroll the child in the Montessori school to "ensure the child

---

pointed to as one source, "[i]nsofar as the right was already regarded as inherent and fundamental by the late part of the Nineteenth Century, the Inherent Rights Clause—which appeared in the Constitution of 1877 and has been carried forward into every Constitution since—may well constitute another source of the guarantee [Ga. Const. Art. I, § I, ¶ XXIX]." *Id.*

[19] As one renowned domestic relations treatise explains, "[t]hree leading duties of parents . . . are recognized at common law; first, to protect; second, *to educate*; third, to maintain them." J. Schouler, A TREATISE ON THE LAW OF DOMESTIC RELATIONS § 233 (4th ed. 1889) (emphasis in original removed and emphasis supplied); *id.* at § 235 ("The second duty of parents is that of education; a duty which Blackstone pronounces to be far the greatest of all these in importance."); *id.* at § 243 ("The rights of parents result from their duties . . . As they are bound to maintain and educate, the law has given them certain authority over their children, and in support of that authority a right to the exercise of such discipline as may be requisite for the discharge of their important trust.").

is not 'homeschooled'" based on its "*own beliefs* as to the child's best interest[.]"[20] And while the trial court may be right that it would be more "convenient" for the child to attend the Montessori school because the mother works there, a parent's constitutional right to make educational choices for his or her child is not limited to those a *judge* (or any other state actor) deems to be convenient or wise. Thus, even if the trial court had been authorized to modify the parents' custody agreement (which it was not), it did not reference any evidence of the *compelling circumstances* necessary to substitute its own preferences as to the child's education for the mother's decision to homeschool her child.[21] And when state actors engage in this sort of Orwellian policymaking disguised as judging, is it any wonder that so many citizens feel as if the government does not speak for them or respect the private realm of family life.

---

[20] (Emphasis supplied).

[21] *See supra* note 6 & accompanying text.

In sum, I take this opportunity, yet again,[22] to remind our trial courts that, in making any decision or taking any action that interferes with a parent-child relationship, our state statutes are subordinate to and must be construed in light of the fundamental rights recognized by the federal and Georgia constitutions—which both include a parent's fundamental right to homeschool a child. As this Court has rightly recognized, "[t]he constitutional right of familial relations is not provided by government; it preexists government."[23] Indeed, this "cherished and sacrosanct right is not a gift from the sovereign; it is our natural birthright. Fixed. Innate. Unalienable."[24] Thus, regardless of a court's personal feelings or perception of a parent's fitness to care for or retain

---

[22] *See*, *e.g.*, *In Interest of R. B.*, ___ Ga. App. at ___ (Dillard, C. J., concurring fully and specially); *In Interest of R. S. T.*, 345 Ga. App. 300, 314-21 (812 SE2d 614) (2018) (Dillard, C. J., concurring fully and specially); *In the Interest of C. H.*, 343 Ga. App. at 13-19 (Dillard, C. J., concurring fully and specially).

[23] *In Interest of E. G. L. B.*, 342 Ga. App. at 848; *accord In the Interest of C. H.*, 343 Ga. App. at 18 (Dillard, C. J., concurring fully and specially); *see In Interest of R. S. T.*, 345 Ga. App. 300, 315-16 (Dillard, C. J., concurring fully and specially) ("The liberty interest parents have in familial relations with their children is a natural-law right that has been enshrined in our positive law. It is a right that preexists government and one that we retain as a people separate and apart from any statute or constitution." (footnotes and punctuation omitted)).

[24] *In Interest of E. G. L. B.*, 342 Ga. App. at 848 (punctuation omitted); *accord In the Interest of C. H.*, 343 Ga. App. at 18 (Dillard, C. J., concurring fully and specially).

11

custody of his or her child, careful consideration of these bedrock constitutional principles and safeguards must remain central to each case without exception. And when this fails to occur, we will not hesitate to remind our trial courts of the solemn obligation they have to safeguard the parental rights of all Georgians.