**SECOND DIVISION
MARKLE,
LAND and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 10, 2025**

# In the Court of Appeals of Georgia

A24A1842. HETHER v. CAMPBELL.

LAND, Judge.

In this child custody case, the mother of a minor child, R. H., appeals from the trial court's May 16, 2024 modification order. Mother argues that the trial court erred in (1) changing legal custody of R. H. despite a finding that there was no material change in circumstances to justify modifying custody; (2) including a self-executing change of custody without any consideration of R. H.'s best interests; (3) failing to provide appropriate weight to the Father's drug tests; and (4) admitting testimony and other evidence that predated the parties' initial custody order. For the reasons that follow, we reverse.

When reviewing an order in a child custody case, we view the evidence in the light most favorable to the trial court's decision. *Strickland v. Strickland*, 298 Ga. 630, 633 (1) (783 SE2d 606) (2016). We are "mindful that the Solomonic task of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility." (Citation and punctuation omitted.) *Gordy v. Gordy*, 246 Ga. App. 802, 803 (1) (542 SE2d 536) (2000). Accordingly, we will not set aside the trial court's factual findings if there is any evidence to support them, and we defer to the trial court's credibility determinations. *Saravia v. Mendoza*, 303 Ga. App. 758, 758 (695 SE2d 47) (2010). We review de novo, however, the legal conclusions the trial court draws from the facts. Id.

So viewed, the record shows that the parties, who never married, have one minor child together, R. H., who was born in 2018. At the time of R. H.'s birth, Father lived in Alabama. In December 2018, a trial court in Tennessee entered an initial custody order ("Initial Order") granting primary physical custody to Mother, adopting a parenting plan proposed by Mother that provided some visitation to Father, and ordering Father to pay $885.00 per month in child support and attorney

2

fees to Mother. As part of the Initial Order, Mother was entitled to make educational decisions for R. H. On December 4, 2020, the parties entered a mediation agreement ("Mediated Order") that allowed Mother to relocate from Tennessee to Georgia, modified some of the visitation terms of the Initial Order and stated that "Mother shall retain decision making authority but agreed to consult with Father regarding any significant decision effecting the welfare of [R. H.]". According to the Mediated Order, "[a]ll other provisions of the original plan that are not inconsistent with this agreement shall remain in full force and effect."

After Mother moved from Tennessee to Georgia, Father remained in Alabama. Father's job requires him to work a non-regular schedule of three weeks on and two weeks off. As a result, Father did not exercise all of the parenting time allotted to him in the Initial and Mediated Orders.

In December 2021, Mother married Daniel Lynch. Mother and Lynch have two minor children together: one born in 2021 and one born in 2023. R. H. is very close to her half-siblings. In October 2023, Lynch obtained a job in Vernal, Utah as a truck driver. Lynch testified that he expects to earn approximately $125,000 per year in this new position and that he previously earned $40,000 while working as an electrician

in Georgia. Mother decided to relocate the entire family to Utah, including R. H., and on November 27, 2023, Mother sent notice to Father of her intent to relocate, including a proposed visitation schedule.

Father then filed a petition for domestication and enforcement of foreign decree, for modification of custody, visitation, and child support in Catoosa County Superior Court, requesting that his visitation schedule be modified and that Mother be prohibited from relocating to Utah. Mother filed an answer and counterclaim requesting permission to relocate to Utah and for contempt. Father subsequently amended his petition to request a modification of custody. A guardian ad litem ("GAL") was appointed. The GAL completed a report in which she noted that both parties completed a hair follicle drug test. Although the results of the testing were not available at the time the GAL issued a report, Father's test results were positive for amphetamine and methamphetamine. In her written report, the GAL recommended that R. H. remain in Mother's primary physical custody, that Mother be permitted to relocate to Utah, and that Father's visitation be modified to account for the relocation.

The trial court held a hearing on the petition, at which the parties, the GAL, and other relatives of the parties testified. After the hearing, the Father submitted to

a second hair follicle test, and the results were positive for methamphetamine. On May 16, 2024, the trial court issued an order (the "Modification Order") in which he found that the Mother's move to Utah was "not enough for the court to find that there has been a material change in circumstances." The trial court also found that Mother had made "several poor decisions relating to school issues," including allowing unexcused absences, withdrawing R. H. so that she could be home schooled, failing to consult with Father, enrolling R. H. in school in Utah, and claiming that pre-K was not mandatory and instead "using it. . . as a babysitter." Despite its finding that there was no material change in circumstances to warrant a change in custody, the trial court found that it was not in the best interest of R. H. to move to Utah. The trial court then ordered that Father "shall be the primary parent in making educational decisions regarding the minor child"; that if Mother "moves to Utah, primary custody of the child vests to the [Father]," but if Mother "stays in Georgia, primary custody shall remain with [Mother]"; and that Father "shall be evaluated for drug use/addiction and shall follow any course of treatment advised." This appeal followed.

1. The mother argues that the trial court erred in changing legal custody of R. H. despite a finding that there was no material change in circumstances to justify modifying custody. Specifically, Mother argues that the trial court's order that Father shall be the primary parent in making educational decisions was an improper modification of the Initial Order. We agree.

> In Georgia, there is a well established two-part test [that] the trial court must employ before instituting a change of custody. The trial court must determine whether there has been a material change in circumstances affecting the welfare of the child since the last custody award. If so, the trial court then determines whether the child's best interests will be served by a change in custody.

(Citations and punctuation omitted.) *Wiggins v. Rogers*, 367 Ga. App. 315, 317 (1) (885 SE2d 823) (2023).

"Where a child goes to school is a parental decision," *Daniel v. Daniel*, 250 Ga. App. 482, 485 (2) (552 SE2d 479) (2001), and this court has previously held that "a change regarding which parent has primary decision-making authority over education is a change in custody." *Borgers v. Borgers*, 347 Ga. App. 640, 644 (1) (a) (820 SE2d 474) (2018). See also *Daniel*, 250 Ga. App. at 483 (2) (mother's petition for change of custody asking that she be designated as primary decision maker on her daughter's

education required a finding of a material change in condition). "A disagreement regarding a child's education may constitute a material change in circumstances sufficient to justify a custody modification if there is evidence of a material change in circumstances that adversely affects the child." *Borgers*, 347 Ga. App. at 644 (1) (a).

Here, the Initial Order and Mediated Order entitled Mother to make educational decisions for R. H. In its Modification Order, the trial court expressly found that Mother's impending move to Utah did not constitute a material change in circumstances. Moreover, although the trial court characterized Mother's decisions regarding R. H.'s education as "poor", it did not find that these decisions constituted a material change in circumstances or that they had adversely affected the minor child. Compare *Fox v. Korucu*, 315 Ga. App. 851, 855 (729 SE2d 16) (2012) (affirming denial of motion for summary judgment when parent "submitted an affidavit stating that [the child's] grades had 'begun to dramatically drop' and that she was unhappy and stressed about attending her current school" because this was "some evidence of a material change in circumstances that adversely affected the child"). The trial court was therefore not authorized to modify which parent had primary decision making authority over R. H.'s education, and we reverse the trial court's judgment in this

7

respect. See *Odum v. Russell*, 342 Ga. App. 390, 393 (1) (802 SE2d 829) (2017) ("[b]ecause the trial court expressly found that there had been no material change in circumstances, the trial court was not authorized to modify the original custody order by altering parental custody arrangements, which included arrangements over which parent would have final authority over certain decisions relating to the child").

2. Mother argues that the trial court erred in including a self-executing change of custody in the Modification Order that vested primary physical custody of R. H. with Father in the event that Mother relocated to Utah. We agree.

"Self-executing change of custody provisions allow for an 'automatic' change in custody based on a future event without any additional judicial scrutiny." *Scott v. Scott*, 276 Ga. 372, 373 (578 SE2d 876) (2003). "Provisions that do not take account of the best interests of the child at the time of a triggering event are utterly devoid of the flexibility necessary to adapt to the unique variables that arise in every case, variables that must be assessed in order to determine what serves the best interests and welfare of a child." (Citation and punctuation omitted.) *Bankston v. Warbington*, 332 Ga. App. 29, 34 (2) (771 SE2d 726) (2015). Our Supreme Court has held that "any self-executing change of custody provision that fails to give paramount import to the

child's best interests in a change of custody as between parents must be stricken as violative of Georgia public policy." (Punctuation and footnote omitted.) *Lester v. Boles*, 335 Ga. App. 891, 892 (1) (782 SE2d 53) (2016) (citing *Dellinger v. Dellinger*, 278 Ga. 732, 733 (1) (609 SE2d 331) (2004)).

Our Supreme Court has rejected self-executing provisions that create an automatic change of custody based solely on a custodial parent's relocation without regard to the best interests of the child. See *Dellinger*, 278 Ga. at 734-736 (1) (reversing trial court judgment with direction that the trial court strike the self-executing provision of the decree that altered custody if the mother moved). This is because "[i]t is well established that Georgia law does not permit a modification of custody based solely on a custodial parent's relocation to another home, city or state[.]" (Citation and punctuation omitted.) *Scott*, 276 Ga. at 374. Instead, "[w]hen exercising its discretion in relocation cases, as in all child custody cases, the trial court must consider the best interests of the child and cannot apply a bright-line test." *Bodne v. Bodne*, 277 Ga. 445, 446 (588 SE2d 728) (2003). "This analysis forbids the presumption that a relocating custodial parent will always lose custody and, conversely, forbids any presumption in favor of relocation." Id.

Here, Father's petition to modify custody was prompted by Mother's notification that she and R. H. would be moving to Utah. The trial court engaged in a best-interests analysis, determined that a move to Utah would not be in R. H.'s best interests, and ordered that primary physical custody of R. H. would vest in Father if Mother relocated to Utah, but would remain with Mother if she stayed in Georgia. Importantly, however, the trial court was still required to find that Mother's move to Utah was a material change in circumstances before engaging in a best interests analysis. "In other words, the best interests of the child should be utilized in deciding the case *once a change in condition has been established*." (Citation and punctuation omitted; emphasis supplied.) *Brazil v. Williams*, 359 Ga. App. 487, 488-489 (1) (a), (859 SE2d 490) (2021). Because the trial court explicitly found that Mother's move to Utah was not a material change in circumstances and because its order has an invalid self-executing provision, it was without authority to vest Father with primary physical custody in the event Mother indeed relocated to Utah. Compare *Bodne*, 277 Ga. at 446-447 (trial court did not abuse its discretion in changing primary physical custody of children due to relocation of primary parent where trial court found a material change in circumstances affecting the children's welfare and engaged in best

interests analysis). Accordingly, the trial court's self-executing provision modifying custody in the event Mother moves to Utah is likewise reversed. See *Odum*, 342 Ga. App. at 393 (1).

3. The mother argues that the trial court erred in failing to modify Father's visitation rights in light of Father's positive drug tests for methamphetamine. We disagree.

Under Georgia law, "visitation rights are a part of custody." *Vines v. Vines*, 292 Ga. 550, 551 (2) (739 SE2d 374) (2013). "Visitation rights of non-custodial parents are subject to review and modification upon the motion of either parent every two years without the necessity of showing a material change in circumstances." (Citation and punctuation omitted.) *Park-Poaps v. Poaps*, 351 Ga. App. 856, 863 (3) (833 SE2d 554) (2019). OCGA § 19-9-23 governs actions to obtain a change of legal or physical custody, and OCGA § 19-9-23 (d) permits a party to bring "a counterclaim for modification of legal custody or physical custody in response to a complaint" for modification of the same. In this case, Father initiated a complaint seeking modification of custody, visitation, and child support. Mother's answer and counterclaim, however, did not seek modification of Father's visitation rights.

Consequently, Mother was precluded from obtaining a modification of Father's visitation rights. See *Pascal v. Pino*, 361 Ga. App. 212, 214-215 (1) (863 SE2d 694) (2021) (father precluded from seeking to modify custody where he did not initiate a complaint or bring a counterclaim to modify custody).

4. In light of our holding in Divisions 1 through 3, we need not address Mother's remaining enumeration of error. .

*Judgment reversed. Markle and Davis, JJ, concur.*